■ In the Matter of ASTORIA GENERATING COMPANY et al., Appellants, v GENERAL COUNSEL OF THE NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents. [750 NYS2d 200] —Lahtinen, J. Appeal from a judgment of the Supreme Court (Ceresia, Jr., J.), entered March 13, 2002 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of the Department of Environmental Conservation denying petitioners' application for a real estate tax exemption.

In 1994, Consolidated Edison Company of New York completed, at a cost in excess of $8 million, the installation of a continuous emission monitoring system (hereinafter CEMS) on six smoke stacks at its Astoria Steam Station in Queens County. The CEMS measures the power plant's pollutants, including sulphur dioxide and nitrogen oxide, which are linked to the environmental problem commonly known as acid rain (*see generally Clean Air Mkts. Group v Pataki*, 194 F Supp 2d 147, 151-153). Petitioners claim that the CEMS was installed to comply with title IV of the Clean Air Act (*see* 42 USC §§ 7651-7651o), the State Acid Deposition Control Act (hereinafter SADCA; *see* ECL art 19, tit 9) and various regulations of the Department of Environmental Conservation (hereinafter DEC; *see e.g.* 6 NYCRR subparts 204-8, 225-1, 227-2). The data collected by the CEMS is used to, inter alia, determine emissions allowances that can be exchanged among power plants under the "cap and trade" program, whereby efficient plants with excess emission allowances are permitted to sell their excess allowances to inefficient plants.

Petitioner Astoria Generating Company purchased the Astoria Steam Station in 1999 and, upon learning that New York City included the value of the CEMS in calculating real property taxes, requested a declaratory ruling from DEC that the

CEMS was eligible for certification as a tax exempt "air pollution control facilit[y]" (RPTL 477-a [7]; *see* ECL 19-0307). Respondent General Counsel of DEC (hereinafter respondent) ruled that the CEMS was not an air pollution control facility within the meaning of RPTL 477-a. Respondent determined that in order to qualify for a tax exemption under the statute "the apparatus must actually and directly 'remove, reduce, or render less noxious air contaminants emitted from' the particular air contamination source," and found that the CEMS was "a passive monitoring system that in and of itself does not remove, reduce, or render less noxious air contaminants emitted from an air contamination source." Petitioners commenced this CPLR article 78 proceeding seeking, inter alia, an order annulling DEC's declaratory ruling and directing DEC to certify the CEMS as an air pollution control facility eligible for tax exemption. Supreme Court dismissed the petition and this appeal ensued.

Statutes providing an exemption from taxation are "construed strictly against the one seeking the exemption" (*Matter of City of New York v Assessors of Town of Roxbury*, 296 AD2d 625, 627; *see Matter of McLane Assoc. v Urbach*, 232 AD2d 826, 827) and petitioners "bear[ ] the burden of establishing entitlement to the exemption" (*Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin.*, 83 NY2d 44, 49). Merely setting forth a plausible alternative statutory interpretation does not satisfy such burden (*id.*). Moreover, where, as here, an agency such as DEC is charged with implementing a statute (*see* ECL 19-0307), its interpretation is entitled to judicial deference (*see Matter of Village of Scarsdale v Jorling*, 91 NY2d 507, 516; *Matter of Craftech Indus. v Jorling*, 218 AD2d 898, 899-900) and will not be disturbed "unless that interpretation is unreasonable, irrational or contrary to the clear wording of the statute" (*Matter of Industrial Indem. Co. v Cooper*, 81 NY2d 50, 54).

RPTL 477-a (1) provides a tax exemption for: "[a]ir pollution control facilities which were constructed or reconstructed in order to comply with the provisions of the environmental conservation law and codes, rules, regulations, permits or orders issued pursuant thereto * * *." Air pollution control facilities are defined, in relevant part, as: "facilities which remove, reduce, or render less noxious air contaminants emitted from air contamination sources * * *. Such term shall further include flue gas desulfurization equipment and attendant sludge disposal facilities, fluidized bed boilers, precombustion coal cleaning facilities or other facilities that conform with this

subdivision and which comply with the provisions of the state acid deposition control act set forth in title nine of article nineteen of the environmental conservation law" (RPTL 477-a [7]). The Commissioner of Environmental Conservation has been delegated the responsibility of "issu[ing] certificates of compliance concerning air pollution control facilities" (ECL 19-0307 [1]) regarding the tax exemption set forth in the pertinent portion of the RPTL.

Petitioner alleges that the CEMS is exempt from taxes under the statutory scheme because it was installed to comply with various environmental laws and regulations, it provides information vital to the "cap and trade" program and such program reduces air pollution. DEC, however, interpreted the crucial statutory language narrowly, finding it applicable only to an apparatus that "actually and directly" removes pollutants and not to one that supplies information utilized in a market-based program (i.e., cap and trade) that functions to reduce pollutants. The phrase "remove, reduce, or render less noxious," read in conjunction with the other operative statutory language, does not point unequivocally to the construction urged by petitioners. While more than one reasonable interpretation of the statutory language is feasible, and, as noted by petitioners, some jurisdictions have extended tax exemption to pollution monitoring devices under similar, but not identical, statutory provisions (*see State Dept. of Revenue & Taxation v Pacificorp*, 872 P2d 1163 [Wyo]; *Timken Co. v Lindley*, 64 Ohio St 2d 224, 230, 416 NE2d 592, 597), we are not persuaded that the interpretation adopted by DEC is unreasonable or irrational.

Nor does the alleged fact that the CEMS was installed to comply with, inter alia, the SADCA legislation compel the conclusion that the system thus falls within the exemption under RPTL 477-a (7). The statutory language in the second sentence of subdivision (7) requires qualifying facilities to not only comply with SADCA, but also to "conform with this subdivision" (RPTL 477-a [7]). Under DEC's construction of the first sentence of subdivision (7) as mandating that a facility actually and directly remove pollutants, the CEMS' monitoring function, while in compliance with SADCA, does not meet the conjunctive requirement of "conform[ing] with this subdivision."

Moreover, we agree with Supreme Court's observation that the Legislature's use of a more expansive definition of "[a]ir pollution control facility" in another statute (*see* Public Authorities Law § 1281 [17]) supports respondent's argument that, if the Legislature had clearly intended a broad interpretation of

such phrase in the subject statute, it could have employed similarly sweeping language in RPTL 477-a.

Petitioners remaining arguments have been considered and found unpersuasive.

Cardona, P.J., Mugglin, Rose and Kane, JJ., concur. Ordered that the judgment is affirmed, without costs.