[822 NE2d 339, 789 NYS2d 88]

In the Matter of CITY COUNCIL OF THE CITY OF WATERVLIET et al., Appellants, v TOWN BOARD OF THE TOWN OF COLONIE, Respondent.

Argued October 13, 2004; decided December 2, 2004

## POINTS OF COUNSEL

*DiMarco & Riley,* Rochester (*Eugene Van Voorhis, Anne Dyring Riley* and *John P. Amuso* of counsel), and *Joseph F. Monaghan, City Attorney,* Watervliet, for appellants. I. Holding a public hearing under General Municipal Law § 705 is not an "action" within the meaning of article 8 of the Environmental Conservation Law requiring state environmental quality review. (*Programming & Sys. v New York State Urban Dev. Corp.,* 93 AD2d 733, 61 NY2d 738; *Matter of Mayerat v Town Bd. of Town of Ashford,* 185 AD2d 699; *Housing Justice Campaign v Koch,* 164 AD2d 656.) II. Municipal annexation proceedings and procedures are established by the Legislature through General Municipal Law article 17, which was enacted pursuant to constitutional mandate under article IX, § 1 (d) of the New York State Constitution and may not be materially amended or changed by regulations of the Commissioner of Environmental Conservation. (*Matter of Connell v Town Bd. of Town of Wilmington,* 113 AD2d 359, 67 NY2d 896; *Cross Westchester Dev. Corp. v Town Bd. of Town of Greenburgh,* 141 AD2d 796; *Matter of Common Council of City of Albany v Town Bd. of Town of Bethlehem,* 23 AD2d 381, 17 NY2d 594; *Matter of City Council of City of Mechanicville v Town Bd. of Town of Halfmoon,* 27 NY2d 369; *Mayor of Vil. of Mount Kisco v Supervisor of Town of Bedford,* 45 NY2d 335; *Matter of Settco, LLC v New York State*

*Urban Dev. Corp.,* 305 AD2d 1026; *Matter of Cerro v Town of Kingsbury,* 250 AD2d 978; *Matter of Citizens For An Orderly Energy Policy v Cuomo,* 78 NY2d 398; *Matter of Abate v City of Yonkers,* 264 AD2d 517; *Matter of Doremus v Town of Oyster Bay,* 274 AD2d 390.) III. The Appellate Division's reliance on the SEQR Handbook regarding municipal annexations is totally at odds with the will of the people in adopting article IX, § 1 (d) of the New York State Constitution and the legislative intent of General Municipal Law article 17 to provide an impartial process to determine the overall public interest in municipal annexations. (*Matter of Rochester Tel. Mobile Communications v Ober,* 251 AD2d 1053; *Matter of Sour Mtn. Realty v New York State Dept. of Envtl. Conservation,* 260 AD2d 920; *Matter of Merson v McNally,* 90 NY2d 742; *Matter of Kahn v Pasnik,* 90 NY2d 569; *Akpan v Koch,* 75 NY2d 561; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Matter of Gordon v Rush,* 100 NY2d 236; *Matter of City Council of City of Mechanicville v Town Bd. of Town of Halfmoon,* 27 NY2d 369; *Mayor of Vil. of Mount Kisco v Supervisor of Town of Bedford,* 45 NY2d 335.) IV. If state environmental quality review be applicable to municipal annexations, then the environmental review should be conducted by the referees as lead agency (especially in view of the quasi-legislative role of the Appellate Division under General Municipal Law § 712) in order to preserve the impartiality of the process. (*Matter of Mayerat v Town Bd. of Town of Ashford,* 185 AD2d 699; *Matter of Common Council of City of Albany v Town Bd. of Town of Bethlehem,* 23 AD2d 381, 17 NY2d 594; *Matter of City Council of City of Mechanicville v Town Bd. of Town of Halfmoon,* 27 NY2d 369; *Mayor of Vil. of Mount Kisco v Supervisor of Town of Bedford,* 45 NY2d 335.) V. New York courts have been reluctant to halt annexation proceedings for alleged lack of full state environmental quality review compliance where no specific or definitive plans for development have been put forward. (*Cross Westchester Dev. Corp. v Town Bd. of Town of Greenburgh,* 141 AD2d 796; *Programming & Sys. v New York State Urban Dev. Corp.,* 93 AD2d 733, 61 NY2d 738; *Matter of People for Westpride v Board of Estimate of City of N.Y.,* 165 AD2d 555; *O'Keeffe v Bonelli,* 170 Misc 2d 218; *Matter of David's Lane—Pondview Preserv. Assn. v Planning Bd. of Inc. Vil. of E. Hampton,* 216 AD2d 389; *Hudson Riv. Sloop Clearwater v Cuomo,* 222 AD2d 386; *Matter of City of Yonkers v County of Westchester,* 183 AD2d 823; *Matter of Board of Trustees of Vil. of Spring Val. v Town of Clarkstown,* 292 AD2d 450; *Matter of Incorporated Vil. of Ilion v*

*Town Bd. of Frankfort,* 261 AD2d 952; *Matter of Taxpayers Opposed to Floodmart v City of Hornell Indus. Dev. Agency,* 212 AD2d 958.) VI. If lack of state environmental quality review were to render the initial annexation petition legally defective, such defect should have been dealt with under General Municipal Law § 711 (3) through CPLR article 78. (*Matter of City Council of City of Saratoga Springs v Town Bd. of Town of Greenfield,* 29 AD2d 167.) VII. If state environmental quality review be applicable to municipal annexations, then appellants should have the right to cure without stopping the proceedings under General Municipal Law § 712. (*Matter of City of Gloversville v Town of Johnstown,* 210 AD2d 760; *Matter of Weinstein Enters. v Town of Kent,* 171 AD2d 874.)

*Arnis Zilgme, Town Attorney,* Newtonville (*Danielle M. DeMers* of counsel), for respondent. I. State Environmental Quality Review Act (SEQRA) review is required within the context of an annexation proceeding and appellants' assertion that SEQRA does not apply to annexation proceedings is contrary to law. (*Matter of Sour Mtn. Realty v New York State Dept. of Envtl. Conservation,* 260 AD2d 920; *Cross Westchester Dev. Corp. v Town Bd. of Town of Greenburgh,* 141 AD2d 796; *Matter of Connell v Town Bd. of Town of Wilmington,* 113 AD2d 359, 67 NY2d 896; *Matter of Village of Saugerties v Town of Saugerties,* 201 AD2d 52; *Matter of City of Gloversville v Town of Johnstown,* 210 AD2d 760; *Matter of Taxpayers Opposed to Floodmart v City of Hornell Indus. Dev. Agency,* 212 AD2d 958; *O'Keeffe v Bonelli,* 170 Misc 2d 218; *Common Council of City of Middletown v Town Bd. of Town of Wallkill,* 143 AD2d 215; *Matter of New York State Lawncare Assn. v County of Albany,* 292 AD2d 719; *Programming & Sys. v New York State Urban Dev. Corp.,* 93 AD2d 733, 61 NY2d 738.) II. The court below did not hold that the joint hearing under General Municipal Law § 705 was an "action" for purposes of the State Environmental Quality Review Act. (*Matter of Taxpayers Opposed to Floodmart v City of Hornell Indus. Dev. Agency,* 212 AD2d 958, 85 NY2d 812; *Matter of Programming & Sys. v New York State Urban Dev. Corp.,* 61 NY2d 738; *Cross Westchester Dev. Corp. v Town Bd. of Town of Greenburgh,* 141 AD2d 796.) III. The Appellate Division cannot act as lead agency for State Environmental Quality Review Act compliance in an annexation proceeding. (*Matter of Tri-County Taxpayers Assn. v Town Bd. of Town of Queensbury,* 55 NY2d 41; *Matter of Village of Saugerties v Town of Saugerties,* 201 AD2d 52; *Matter of City Council of City of Saratoga Springs v Town Bd. of Town of Greenfield,* 29 AD2d 167.) IV. Noncompli-

ance with the State Environmental Quality Review Act does not render the annexation petition itself legally insufficient and as such respondent was not precluded from bringing a motion to dismiss on this issue. (*Matter of City Council of City of Saratoga Springs v Town Bd. of Town of Greenfield,* 29 AD2d 167; *Matter of Village of Saugerties v Town of Saugerties,* 201 AD2d 52.) V. The State Environmental Quality Review Act requires "literal compliance" and as such appellants cannot now cure after the fact. (*Matter of Tri-County Taxpayers Assn. v Town Bd. of Town of Queensbury,* 55 NY2d 41; *Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359; *Matter of King v Saratoga County Bd. of Supervisors,* 89 NY2d 341; *Matter of City of Gloversville v Town of Johnstown,* 210 AD2d 760.)

*Eliot Spitzer, Attorney General,* Albany (*Peter Lehner, Caitlin J. Halligan, Daniel Smirlock, Denise Hartman, John J. Sipos, James Tierney* and *Philip M. Bein* of counsel), for New York State Department of Environmental Conservation, amicus curiae. I. Annexation of territory by a municipality is subject to the State Environmental Quality Review Act. (*Matter of Sour Mtn. Realty v New York State Dept. of Envtl. Conservation,* 260 AD2d 920, 93 NY2d 815; *Matter of New York City Coalition to End Lead Poisoning v Vallone,* 100 NY2d 337; *Matter of WEOK Broadcasting Corp. v Planning Bd. of Town of Lloyd,* 165 AD2d 578, 79 NY2d 373; *Stop-The-Barge v Cahill,* 1 NY3d 218; *Matter of Tri-County Taxpayers Assn. v Town Bd. of Town of Queensbury,* 55 NY2d 41; *Matter of Sun Beach Real Estate Dev. Corp. v Anderson,* 98 AD2d 367; *New York SMSA Ltd. Partnership v Town of Riverhead Town Bd.,* 118 F Supp 2d 333; *East Hampton Airport Prop. Owners Assn., Inc. v Town Bd. of E. Hampton,* 72 F Supp 2d 139; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Stettine v County of Suffolk,* 66 NY2d 354.) II. The Department of Environmental Conservation properly classifies annexation decisions as subject to State Environmental Quality Review Act. (*Cross Westchester Dev. Corp. v Town Bd. of Town of Greenburgh,* 141 AD2d 796; *Matter of Taxpayers Opposed to Floodmart v City of Hornell Indus. Dev. Agency,* 212 AD2d 958, 85 NY2d 812; *O'Keeffe v Bonelli,* 170 Misc 2d 218; *Matter of Young v Board of Trustees of Vil. of Blasdell,* 221 AD2d 975; *Matter of New Scotland Ave. Neighborhood Assn. v Planning Bd. of City of Albany,* 142 AD2d 257; *Ginsburg Dev. Corp. v Town Bd. of Town of Cortlandt,* 150 Misc 2d 24; *Matter of Neville v Koch,* 79 NY2d 416; *Matter of Brew v Hess,* 124 AD2d 962; *Matter of Kirk-Astor Dr. Neighborhood Assn. v Town Bd. of Town of Pittsford,* 106 AD2d 868, 66 NY2d 896; *Matter of*

*Argyle Conservation League v Town of Argyle,* 223 AD2d 796.)
III. Environmental review should have been completed before
the City Council of the City of Watervliet's approval of annex-
ation. (*Stop-The-Barge v Cahill,* 1 NY3d 218; *Matter of Sun
Beach Real Estate Dev. Corp. v Anderson,* 98 AD2d 367; *Matter
of WEOK Broadcasting Corp. v Planning Bd. of Town of Lloyd,*
165 AD2d 578; *Matter of Tri-County Taxpayers Assn. v Town
Bd. of Town of Queensbury,* 55 NY2d 41; *Matter of Schultz v
Jorling,* 164 AD2d 252, 77 NY2d 810; *Matter of Taxpayers Op-
posed to Floodmart v City of Hornell Indus. Dev. Agency,* 212
AD2d 958; *Matter of Brew v Hess,* 124 AD2d 962; *Matter of
Kirk-Astor Dr. Neighborhood Assn. v Town Bd. of Town of Pitts-
ford,* 106 AD2d 868; *Matter of Argyle Conservation League v
Town of Argyle,* 223 AD2d 796; *Matter of Programming & Sys.
v New York State Dept. of Urban Dev. Corp.,* 61 NY2d 738.)

### OPINION OF THE COURT

GRAFFEO, J.

We are asked in this case whether State Environmental Qual-
ity Review Act (SEQRA) review is required before a municipal-
ity adopts a resolution approving the annexation of real prop-
erty from an adjacent municipality. We conclude that SEQRA
requirements apply to all annexations under article 17 of the
General Municipal Law, but that the extent of environmental
assessment that must be undertaken is dependent on the
specific development plans associated with the transfer of terri-
tory.

When a municipality seeks to acquire territory that lies within
the boundaries of an adjacent municipality, article 17 of the
General Municipal Law—known as the Municipal Annexation
Law—sets forth the public interest concerns that must be
weighed and the requisite procedural steps to be followed.[1] Gen-
erally, a proposed annexation is initiated by a petition signed by
either 20% of the persons residing within the territory who are
qualified to vote or by the owners of a majority of the assessed
valuation of land in the area proposed to be transferred (*see*
General Municipal Law § 703). Upon notice to the public and af-

---

1. "Annexation" is defined as "[a]n alteration of the boundaries of a
county, city, town or village which has the effect of adding territory to it. Such
term shall not include the creation or dissolution of a county, city, town or vil-
lage, or the consolidation of two or more counties, two or more cities, two or
more towns or two or more villages, respectively, or the diminution of the area
of a village pursuant to section 18-1804 of the village law" (General Municipal
Law § 701 [1]).

fected residents, the governing boards of the affected municipalities conduct a joint public hearing on the issue whether the annexation is in the overall public interest (*see* General Municipal Law §§ 704, 705). Within 90 days after the hearing, the governing board of each locality must adopt a resolution and issue a written order regarding whether annexation is in the overall public interest (*see* General Municipal Law § 711). In the event the local governments disagree, application may be made to the appropriate Appellate Division department to determine whether the proposed annexation is in the overall public interest (*see* General Municipal Law § 712).[2]

In this case, petitioner East-West Realty Corporation is the owner of approximately 37 acres of vacant property located in the Town of Colonie and adjacent to the City of Watervliet. The property is currently zoned to permit single family residences. East-West inquired of the Town about the possibility of constructing a senior citizen assisted-living development at the site and claims that the informal response from the Town was unfavorable. East-West then filed a petition with respondent Town Board of the Town of Colonie and petitioner City Council of the City of Watervliet seeking to have approximately 43 acres, including its 37 acres, transferred by annexation to Watervliet in accordance with article 17 of the General Municipal Law.[3]

In December 2002, Colonie and Watervliet held a joint public hearing on the petition. East-West did not present a formal development plan, but indicated "the property is proposed to be developed as potentially assisted living senior apartments." Watervliet subsequently passed a resolution approving of the annexation and declaring the transfer of realty to be in the overall public interest. Colonie meanwhile adopted a resolution denying the petition on the ground that annexation was not in the overall public interest. Colonie took the position that review of potential environmental impact under SEQRA was necessary to fully assess whether annexation was in the public interest.

Faced with conflicting municipal resolutions, Watervliet commenced this proceeding in the Appellate Division, and East-West intervened as a petitioner. In its answer and by motion to

---

2. If the municipalities agree, "such determination shall be final and conclusive" (General Municipal Law § 711 [4]).

3. The premises affected by the annexation petition consists of several parcels: 36.6 acres owned by East-West, 2.8 acres owned by Rait Highland Club, LLC and a 3.8 acre Niagara Mohawk utility corridor. The latter two owners are not parties to this proceeding.

dismiss the amended petition, Colonie asserted that Watervliet failed to comply with SEQRA requirements prior to approving the proposed annexation.[4] East-West cross-moved for an order appointing three referees to hear and report to the Court. The Appellate Division dismissed the petition and agreed with Colonie to the extent it held that "an appropriate form of SEQRA review of an annexation 'action' is required" before either municipality could adopt a resolution regarding the annexation (309 AD2d 1114, 1116 [2003]). We granted Watervliet and East-West leave to appeal and now affirm.

SEQRA's primary purpose "is to inject environmental considerations directly into governmental decision making" (*Matter of Coca-Cola Bottling Co. v Board of Estimate*, 72 NY2d 674, 679 [1988]). The Legislature's intent is reflected in the statute, which requires that "[s]ocial, economic, and environmental factors [ ] be considered together in reaching decisions on proposed activities" (ECL 8-0103 [7]). The procedures necessary to fulfill SEQRA review are carefully detailed in the statute and its implementing regulations (*see* ECL 8-0101—8-0117; 6 NYCRR part 617; *see also Matter of New York City Coalition to End Lead Poisoning v Vallone*, 100 NY2d 337, 347-348 [2003]), and we have recognized the need for strict compliance with SEQRA requirements (*Matter of Merson v McNally*, 90 NY2d 742, 750 [1997]).

In this case, Watervliet and East-West initially argue that SEQRA does not apply to municipal annexations because article 17 of the General Municipal Law, which does not incorporate SEQRA explicitly, provides the exclusive process for annexations. They also contend that General Municipal Law § 718 (5) indicates that "[t]he provisions of [article 17] shall be controlling notwithstanding any inconsistent act of the legislature to the contrary," and therefore article 17 exempts annexations from SEQRA. We conclude, however, that SEQRA is neither inconsistent with nor contrary to the procedures delineated in the General Municipal Law.

It is well established that SEQRA "is a law of general applicability" (*Matter of Sour Mtn. Realty, Inc. v New York State Dept. of Envtl. Conservation*, 260 AD2d 920, 923 [1999], *lv denied* 93 NY2d 815 [1999]). Moreover, the Legislature has declared

---

4. We agree with the Appellate Division that Colonie properly raised the SEQRA issue as an affirmative defense in its answer to the petition. Because Colonie served the answer within four months of Watervliet's adoption of its resolution approving the annexation, the objection was timely (*see* CPLR 217).

"that 'to the fullest extent possible' statutes should be administered by the State and its political subdivisions in accordance with the policies set forth in SEQRA and that environmental factors should be considered in reaching decisions on proposed projects" (*Matter of Tri-County Taxpayers Assn. v Town Bd. of Town of Queensbury*, 55 NY2d 41, 46 [1982] [quoting ECL 8-0103 (6)]). The overriding goal of article 17 of the General Municipal Law is to assess whether a proposed annexation is in the best interest of the public. After a joint hearing predicated upon a petition for annexation is held (*see* General Municipal Law § 705), each municipality must, within 90 days of the hearing, decide whether annexation is in the "over-all public interest" (General Municipal Law § 711 [1]). Where the involved municipalities disagree on whether annexation is in the public's best interest—as happened in this case—the Appellate Division may be called upon to consider "whether the proposed annexation is in the over-all public interest" (General Municipal Law § 712 [1], [10]). The aims of SEQRA are congruous—the objective is to determine " 'whether or not a project or activity should be approved or undertaken in the best over-all interest of the people of the State' " (*Matter of WEOK Broadcasting Corp. v Planning Bd. of Town of Lloyd*, 79 NY2d 373, 380 [1992], quoting *Matter of Town of Henrietta v Department of Envtl. Conservation*, 76 AD2d 215, 222 [1980]). We believe that SEQRA promotes, rather than undermines, the public interest purposes of article 17 of the General Municipal Law and therefore conclude that General Municipal Law § 718 (5) does not exempt the annexation process from SEQRA review.[5]

Watervliet and East-West further submit that SEQRA review is not required because annexation, in and of itself, is not an "action" as defined in article 8 of the Environmental Conservation Law. They contend that a proposed annexation must be accompanied by a specific development plan before SEQRA is triggered. Because East-West has no definite plans for the site and has not filed any formal application for development of its property, they claim that any SEQRA analysis is premature. We disagree.

Article 8 of the Environmental Conservation Law creates the procedural and substantive requirements for governmental enti-

---

5. Notably, article 17 of the General Municipal Law was enacted in 1963 (*see* L 1963, ch 844), 12 years before SEQRA was adopted in 1975 (*see* L 1975, ch 612).

ties to follow when reviewing the environmental consequences of proposed projects or "actions" (*see Matter of WEOK Broadcasting Corp.*, 79 NY2d at 381). "Action" is a term of art in the SEQRA statute and is broadly defined to include:

> "(i) projects or activities directly undertaken by any agency; or projects or activities supported in whole or part through contracts, grants, subsidies, loans, or other forms of funding assistance from one or more agencies; or projects or activities involving the issuance to a person of a lease, permit, license, certificate or other entitlement for use or permission to act by one or more agencies; [and]

> "(ii) policy, regulations, and procedure-making" (ECL 8-0105 [4]).[6]

Pursuant to its authority under section 8-0113 of the Environmental Conservation Law, the New York State Department of Environmental Conservation (DEC) has promulgated regulations that refine the definition of "actions" for SEQRA purposes. For example, under DEC's regulations, "actions" include "agency planning and policy making activities that may affect the environment and commit the agency to a definite course of future decisions" and the "adoption of agency rules, regulations and procedures, including local laws, codes, ordinances, executive orders and resolutions that may affect the environment" (6 NYCRR 617.2 [b] [2], [3]).

In 1987, apparently in response to *Matter of Connell v Town Bd. of Town of Wilmington* (113 AD2d 359 [1985], *affd* 67 NY2d 896 [1986]),[7] DEC amended its regulations to clarify that the annexation of 100 or more contiguous acres constitutes a Type I action (*see* 6 NYCRR 617.4 [b] [4]). In doing so, DEC implicitly determined that an annexation of less than 100 acres is an

---

**6.** SEQRA also specifies that
" '[a]ctions' do not include:
"(i) enforcement proceedings or the exercise of prosecutorial discretion in determining whether or not to institute such proceedings;
"(ii) official acts of a ministerial nature, involving no exercise of discretion; [and]
"(iii) maintenance or repair involving no substantial changes in existing structure or facility" (ECL 8-0105 [5]).

**7.** In *Connell*, the Appellate Division held that a municipality's adoption of a resolution approving an annexation "was not an 'action' as defined by SEQRA" and therefore SEQRA review was unnecessary (113 AD2d at 361). We affirmed on the narrow ground that the proceeding was untimely.

"unlisted action" (*see Cross Westchester Dev. Corp. v Town Bd. of Town of Greenburgh*, 141 AD2d 796, 797 [1988]; SEQR Handbook, at 105 [1992 ed]).[8]

In urging that a proposed annexation, absent a formal development project, cannot be an "action" for SEQRA purposes, Watervliet and East-West in effect assert that DEC's regulation is invalid. Because DEC is entitled to deference in its construction and application of environmental conservation statutes, our standard of review is limited to whether DEC's interpretation is unreasonable or irrational (*see Matter of Rodriguez v Perales*, 86 NY2d 361, 367 [1995]; *Matter of Astoria Generating Co. v General Counsel of N.Y. State Dept. of Envtl. Conservation*, 299 AD2d 706, 707 [2002]).

We cannot say that DEC's classification of annexations as actions subject to SEQRA is unreasonable. Annexations are often the first step toward the development of real property and may involve a change in municipal services or land use regulation. A principal goal of SEQRA is "to incorporate environmental considerations into the decisionmaking process at the earliest opportunity" (*Matter of Neville v Koch*, 79 NY2d 416, 426 [1992]; *see also* 6 NYCRR 617.1 [c]). Based on SEQRA's broad definition of "actions," which should be liberally construed to facilitate SEQRA's salutary purposes, it is not irrational to require SEQRA review of annexations while municipalities contemplate the ramifications of an annexation proposal.

*Matter of Programming & Sys. v New York State Urban Dev. Corp.* (61 NY2d 738 [1984]) does not dictate a contrary result. In that case, the Urban Development Corporation (UDC) had been involved with the City of New York in attempting to redevelop a neighborhood surrounding a building leased by the petitioner. The petitioner, whose lease would be terminated

---

8.  The regulations classify actions as Type I, Type II or unlisted, depending on the potential effects on the environment (*Matter of Merson v McNally*, 90 NY2d 742, 750 [1997]). A Type I action "carries with it the presumption that it is likely to have a significant adverse impact on the environment and may require an EIS [environmental impact statement]" (6 NYCRR 617.4 [a] [1]). A Type II action is not subject to SEQRA review because it has "been determined [by DEC] not to have a significant impact on the environment or [is] otherwise precluded from environmental review under Environmental Conservation Law, article 8" (6 NYCRR 617.5 [a]). Finally, all remaining actions are classified as "unlisted" actions (6 NYCRR 617.2 [ak]). Type I and unlisted actions are subject to SEQRA review, and Type I actions "are more likely to require the preparation of an EIS than Unlisted actions" (6 NYCRR 617.4 [a]).

without compensation in the event of an eminent domain proceeding, commenced a proceeding against the UDC, alleging that before it could proceed any further, the UDC had to prepare and file an environmental impact statement. The UDC countered that any redevelopment in the area was still in the planning stage and therefore such environmental review was not required. We affirmed the dismissal of the petition, holding that although the UDC had taken preliminary steps in its redevelopment plan, "an environmental impact statement is not required until a specific project plan for the development is actually formulated and proposed" (*id.* at 739).

*Programming* is distinguishable for three reasons. First, although East-West's tenuous plans may be analogous to the lack of a definite project plan in *Programming*, this case involves a specific request for governmental action—approval of an annexation proposal. Second, unlike *Programming*, a DEC regulation designates the proposed governmental activity at issue as an "action" for purposes of SEQRA application. Finally, whereas the particular issue in *Programming* was whether an environmental impact statement was necessary, the issue here is whether any form of SEQRA review is required.

Having concluded that SEQRA applies to municipal annexations in general, we next address the appropriate extent or level of environmental review applicable to the proposed annexation before us. DEC's regulations contemplate two types of environmental review: the environmental assessment form (EAF) and the environmental impact statement (EIS). All "actions" subject to SEQRA (i.e., Type I and unlisted actions) initially require the preparation of an EAF, whose purpose is to aid an agency "in determining the environmental significance or nonsignificance of actions" (6 NYCRR 617.2 [m]; *see also* 617.6 [a] [2], [3]).[9] After reviewing the EAF, if the lead agency (which can be a designated municipality) determines "that the action may include the potential for at least one significant adverse environmental impact," a positive declaration must be issued and completion of an EIS becomes necessary (6 NYCRR 617.7 [a] [1]; *see also* ECL 8-0109 [2]). The EIS is a more

---

**9.** Type I actions require the preparation of a "full" EAF whereas unlisted actions may use either the "full" or "short" EAF (6 NYCRR 617.6 [a] [2], [3]; *see also* 6 NYCRR 617.20 Appendices A, C). The agency may waive the requirement of an EAF if a draft EIS is submitted instead (6 NYCRR 617.6 [a] [4]).

comprehensive evaluation of environmental impact.[10] Conversely, an EIS will not be required and the agency may issue a negative declaration where it concludes "that there will be no adverse environmental impacts or that the identified adverse environmental impacts will not be significant" (6 NYCRR 617.7 [a] [2]). Thus, "[w]hile an EAF is used to determine significance or nonsignificance, the purpose of an EIS is to examine the identified potentially significant environmental impacts which may result from a project" (*Matter of Merson*, 90 NY2d at 751).

◼ Here, because the proposed annexation of approximately 43 acres is an unlisted action, an EAF is appropriate and must be completed before Watervliet or Colonie acts to adopt or reject the petition for annexation. Since the annexation proposal lacks a specific project plan that has been officially submitted or a rezoning proposal that changes the use for which the property may be utilized, the EAF will necessarily be limited to the annexation itself and its effects. Where, on the other hand, an annexation is premised upon a formal project plan, environmental review will be more extensive and must address the specific use of the property in evaluating the related environmental effects

---

**10.** If a lead agency decides that an EIS is necessary, a draft EIS (DEIS) must be prepared. After the agency accepts a DEIS, it must be filed with DEC and copies made available to members of the public on request (ECL 8-0109 [4]; 6 NYCRR 617.12 [b]). The agency can also conduct a public hearing on notice (6 NYCRR 617.9 [a] [4]). Unless the agency withdraws the proposed action or determines that it "will not have a significant adverse impact on the environment," the agency must prepare a final EIS (FEIS) 45 days after any hearing or 60 days after the filing of the DEIS, whichever occurs later (6 NYCRR 617.9 [a] [5]). Before issuing final approval, the agency must consider the FEIS and make written findings that the requirements of SEQRA have been met (6 NYCRR 617.11).

As to content, the EIS must include a description of the proposed action, its environmental impacts and any unavoidable adverse effects (ECL 8-0109 [2] [a]-[c]); "alternatives to the proposed action" (ECL 8-0109 [2] [d]), including a "no action alternative" (6 NYCRR 617.9 [b] [5] [v]); and "mitigation measures proposed to minimize the environmental impact" (ECL 8-0109 [2] [f]; *see also* 6 NYCRR 617.9 [b] [5] [iv]). An agency must "make an explicit finding that the requirements of [SEQRA] have been met and that consistent with social, economic and other essential considerations, to the maximum extent practicable, adverse environmental effects revealed in the environmental impact statement process will be minimized or avoided" (ECL 8-0109 [8]; *see generally Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 415-416 [1986]).

(*see Programming*, 61 NY2d at 739; *see also Cross Westchester Dev. Corp.*, 141 AD2d at 797).[11]

We have considered Watervliet's and East-West's remaining arguments and found them to be without merit.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, READ and R.S. SMITH concur.

Order affirmed, with costs.

---

11. If annexation includes a rezoning proposal that would change the permissible use of the parcel, "environmental review may be conducted on a conceptual basis" even where no specific project is proposed because the new zoning requirements provide the parameters to conduct meaningful review (*Matter of Neville*, 79 NY2d at 426; *see also Matter of Brew v Hess*, 124 AD2d 962, 965 [1986]; *Matter of Kirk-Astor Dr. Neighborhood Assn. v Town Bd. of Town of Pittsford*, 106 AD2d 868, 869 [1984], *appeal dismissed* 66 NY2d 896 [1985]).