In the Matter of City of Middletown, Petitioner, v Town Board of Town of Wallkill et al., Respondents. [863 NYS2d 52]—

Consolidated proceeding (1) pursuant to General Municipal

Law § 712, in effect, to determine whether the proposed annexation of the City of Middletown of certain real property located in the Town of Wallkill is in the overall public interest, and (2) pursuant to CPLR article 78 to review so much of a determination of the Town Board of the Town of Wallkill dated August 17, 2006, as, after a public hearing, denied the petition for annexation submitted with respect to the territory by Mt. Hope Development Corp. and Montrose VA Project, LLC, on the grounds that it failed to comply with the requirements of General Municipal Law article 17, that annexation would affect the boundaries of state senate and assembly districts, and that an environmental impact statement was required to be prepared and circulated in accordance with the State Environmental Quality Review Act (ECL art 8).

Adjudged that the branch of the consolidated petition which is pursuant to CPLR article 78 to review so much of the determination dated August 17, 2006, as denied the petition for annexation on the grounds that it failed to comply with the requirements of General Municipal Law article 17, that annexation would affect the boundaries of state senate and assembly districts, and that an environmental impact statement was required to be prepared and circulated in accordance with the State Environmental Quality Review Act is granted, without costs or disbursements, and that portion of the determination is annulled; the branch of the consolidated petition which is pursuant to CPLR article 78 is severed, and the Referees designated to hear and report on the issue of whether the proposed annexation is in the overall public interest pursuant to General Municipal Law § 712 (6) shall proceed expeditiously to hear and report on such issues, and the proceeding pursuant to General Municipal Law § 712 shall continue to be held in abeyance.

Mt. Hope Development Corp. (hereinafter Mt. Hope) and Montrose VA Project, LLC (hereinafter Montrose), are the owners of certain real property located in the Town of Wallkill. In 2003 Mt. Hope and Montrose requested that the Town provide water and sewer service to their property. Various meetings were held at which the parties discussed the possibility of creating a cooperative water and sewer district with the City of Middletown, which was servicing properties adjacent to those owned by Mt. Hope and Montrose. After two years had passed without any action by the Town on the request for water and sewer service, Mt. Hope and Montrose submitted a petition for annexation to the Town Board of the Town of Wallkill (hereinafter the Town Board), seeking annexation, to the City, of their real property and adjacent public property owned by the County

of Orange. After a public hearing, the Town Board, in a determination dated August 17, 2006, denied the petition for annexation, finding that the proposed annexation was not in the public interest, that the petition failed to comply with the requirements of article 17 of the General Municipal Law, that annexation would violate General Municipal Law § 716 (1) in that it would affect state senate and assembly districts, and that Mt. Hope and Montrose failed to prepare and circulate a full environmental impact statement in accordance with the State Environmental Quality Review Act (ECL art 8, hereinafter SEQRA). In response to that determination, the City simultaneously commenced a proceeding in this Court pursuant to General Municipal Law § 712 (1) to determine whether the proposed annexation is in the overall public interest, and a proceeding pursuant to CPLR article 78 in the Supreme Court, Orange County, to review the Town Board's determination in all other respects. In a decision and order on motion of this Court dated March 17, 2008, the proceeding pursuant to CPLR article 78 was transferred to this Court, and consolidated with the proceeding pursuant to General Municipal Law § 712 (1) (*see* General Municipal Law § 712 [3]).

General Municipal Law § 703 (1), (2) requires that a petition for annexation satisfy certain requirements, including a directive that it "describ[e] the territory," that it be signed "by the owners of a majority in assessed valuation of the real property in such territory," and that it "be authenticated as to all signatures upon each separate sheet by appending at the bottom of such sheet an affidavit of a witness as to the subscription thereof." At any public hearing upon a petition for annexation, the governing boards of the local governments involved "shall hear any testimony and receive evidence and information which may be presented concerning the petition . . . including but not limited to testimony, evidence, and information concerning" whether the petition complies with the requirements of General Municipal Law § 703 and otherwise substantially complies in form and content with the provisions of article 17 of the General Municipal Law (*see* General Municipal Law § 705 [1]). Objections on those grounds are required to be placed on the record through "oral testimony" and submitted "in writing" to the governing boards holding the public hearing (General Municipal Law § 705 [2]; *see City of Batavia v Howland*, 43 AD2d 787 [1973]).

Here, the Town Board erred in denying the petition for annexation on the ground that it did not comply with the various requirements of article 17 of the General Municipal Law, since

no objections were placed on the record (*see Matter of Wright v Ransom*, 307 NY 317, 321 [1954]; *cf. City of Batavia v Howland*, 43 AD2d at 787). By failing to object, or entertain objections from others, the Town Board conceded that the petition for annexation complied with the requirements of article 17 of the General Municipal Law. In any event, the petition for annexation satisfied the requirements of General Municipal Law § 703 and otherwise substantially complied in form and content with the provisions of article 17 of the General Municipal Law (*see* General Municipal Law § 705 [1]; *Matter of Cutler v Herman*, 2 AD2d 782 [1956], *affd* 3 NY2d 334 [1957]; *Matter of Skidmore Coll. v Cline*, 58 Misc 2d 582, 584 [1969], *affd* 32 AD2d 985 [1969]).

Contrary to the Town Board's contention, Mt. Hope and Montrose have standing to seek annexation, to the City, of adjacent property belonging to the County that is presently located in the Town. General Municipal Law § 703 (1) merely requires that the owners of a majority in assessed valuation of the real property in the territory sought to be annexed sign the petition. Moreover, the fact that the County's property, County Route 78, is located within the boundaries of the property sought to be annexed to the City does not destroy the necessary contiguity of the subject parcels (*see Matter of Common Council of City of Gloversville v Town Bd. of Town of Johnstown*, 32 NY2d 1, 4 [1973]).

General Municipal Law § 716 (1) provides that "[a]n annexation shall not affect the boundaries of any congressional district, senate district or assembly district." Contrary to the Town Board's contention, this provision merely acts as a restriction on the effect of annexation and not as an outright prohibition. In other words, while the properties to be annexed would become part of the City, the boundaries of state legislative districts would remain the same (*see* 1968 Ops Atty Gen [Inf Ops] 99). This interpretation is in accordance with other provisions of General Municipal Law § 716 (*see* General Municipal Law § 716 [12]; 2002 Ops Atty Gen No. 2002-14; 1990 Ops Atty Gen No. 90-59; 1989 Ops Atty Gen No. 89-19; *see generally Matter of Charter Dev. Co., L.L.C. v City of Buffalo*, 6 NY3d 578, 581 [2006]). By way of contrast, where the Legislature desired to prohibit certain types of annexation, it has used clear prohibitive language (*see* General Municipal Law § 716 [3]-[6]).

Under SEQRA, the annexation of more than 100 acres of land constitutes a type I action, requiring not only the preparation of an environmental assessment form (hereinafter EAF) in order to determine the significance of such action, but creating a

presumption of environmental significance that triggers the preparation of an environmental impact statement (hereinafter EIS) (*see Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie*, 3 NY3d 508, 517-520 [2004]; 6 NYCRR 617.2 [b] [4]; 617.6 [a] [2]). However, where "the annexation proposal lacks a specific project plan that has been officially submitted or a rezoning proposal that changes the use for which the property may be utilized, the EAF will necessarily be limited to the annexation itself and its effects" (*Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie*, 3 NY3d at 520; *see Cross Westchester Dev. Corp. v Town Bd. of Town of Greenburgh*, 141 AD2d 796, 797 [1988]). After reviewing an EAF, if the lead agency determines "that the action may include the potential for at least one significant adverse environmental impact," a positive declaration must be issued and the preparation and circulation of an EIS becomes necessary (*Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie*, 3 NY3d at 519; *see* 6 NYCRR 617.7 [a] [1]). Conversely, if the lead agency determines that there will be "no adverse environmental impacts [from the action] or that the identified adverse environmental impacts will not be significant," a negative declaration may be issued and the preparation and circulation of an EIS is not required (*Matter of New York City Coalition to End Lead Poisoning v Vallone*, 100 NY2d 337, 347 [2003]; 6 NYCRR 617.7 [a] [2]).

Here, since no specific plan for the property had been officially submitted or a rezoning proposal made that would change the use of the property, the EAF was limited to the annexation itself and its effects (*see Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie*, 3 NY3d at 520; *Matter of Programming & Sys. v New York State Urban Dev. Corp.*, 61 NY2d 738, 739 [1984]; *Cross Westchester Dev. Corp. v Town Bd. of Town of Greenburgh*, 141 AD2d at 797). Thus, the Town Board's determination that an EIS was required to be prepared and circulated was premised on its speculative conclusion as to how Mt. Hope and Montrose intended to use the property. However, a town board may not require an EIS "based on a speculative possibility of use of the property" (*Cross Westchester Dev. Corp. v Town Bd. of Town of Greenburgh*, 141 AD2d at 797).

Accordingly, that branch of the petition which is to review so much of the Town Board's determination as denied the petition for annexation on the grounds that it failed to comply with the requirements of article 17 of the General Municipal Law, that annexation would affect the boundaries of state senate and as-

sembly districts, and that an EIS was required to be prepared and circulated in accordance with the SEQRA, is granted, and the Town Board's determination is annulled to that extent. Spolzino, J.P., Fisher, Carni and Dickerson, JJ., concur.