Matter of Frank J. Ludovico Sculpture Trail Corp. v Town of Seneca Falls (2019 NY Slip Op 04621)





Matter of Frank J. Ludovico Sculpture Trail Corp. v Town of Seneca Falls


2019 NY Slip Op 04621


Decided on June 7, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 7, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CARNI, DEJOSEPH, NEMOYER, AND TROUTMAN, JJ.


1477 OP 18-01073

[*1]IN THE MATTER OF THE FRANK J. LUDOVICO SCULPTURE TRAIL CORP., PETITIONER,
v
TOWN OF SENECA FALLS, RESPONDENT. 






CHALIFOUX LAW, P.C., PITTSFORD (SHEILA M. CHALIFOUX OF COUNSEL), FOR PETITIONER.
BARCLAY DAMON LLP, ROCHESTER (MARK R. MCNAMARA OF COUNSEL), FOR RESPONDENT. 


 Proceeding pursuant to Eminent Domain Procedure Law § 207 (initiated in the Appellate Division of the Supreme Court in the Fourth Judicial Department) to annul a determination of respondent. The determination resolved to acquire an easement over certain real property. 
It is hereby ORDERED that the determination is unanimously annulled on the law without costs and the petition is granted.
Memorandum: Petitioner commenced this original proceeding pursuant to EDPL 207 seeking to annul a determination of respondent to acquire an easement along a nature trail commemorating the women's rights movement in order to install a sewer line. We agree with petitioner that the determination must be annulled based upon respondent's failure to comply with EDPL article 2. Specifically, respondent failed to comply with the provisions of the State Environmental Quality Review Act ([SEQRA] ECL art 8) when its Town Board adopted a negative declaration pursuant to that act without taking the requisite hard look at the project's impact on wildlife or providing a reasoned elaboration of the basis for its determination of no significant impact on wildlife or surface water (see EDPL 207 [C] [3]).
In determining whether the lead agency complied with the substantive requirements of SEQRA, judicial review is " limited to whether the lead agency . . . identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination' " (Matter of Wellsville Citizens for Responsible Dev., Inc. v Wal-Mart Stores, Inc., 140 AD3d 1767, 1768 [4th Dept 2016]; see Matter of Friends of P.S. 163, Inc. v Jewish Home Lifecare, Manhattan, 30 NY3d 416, 430 [2017], rearg denied 31 NY3d 929 [2018]). The requirement that the lead agency "set forth its determination of significance in a written form containing a reasoned elaboration" is in the regulations (6 NYCRR 617.7 [b] [4]; see Matter of Rochester Eastside Residents for Appropriate Dev., Inc. v City of Rochester, 150 AD3d 1678, 1680 [4th Dept 2017]). " SEQRA's procedural mechanisms mandate strict compliance, and anything less will result in annulment of the lead agency's determination of significance' " (Rochester Eastside Residents for Appropriate Dev., Inc., 150 AD3d at 1679; see Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie, 3 NY3d 508, 515 [2004]).
On November 19, 2015, the New York State Department of Environmental Conservation (DEC) made respondent aware that its database indicated the presence of certain endangered, threatened, or rare animal and plant species on the project site. Those species included the northern long-eared bat, the imperial moth, and the northern bog violet. In addition, the database indicated the presence of inland salt marsh. The DEC recommended that respondent conduct a survey of the professional literature and determine whether the project site contains habitats favorable to such species and, if so, that respondent conduct a field survey to determine whether [*2]the species are present. The DEC instructed that, if respondent determined that such species are present, modifications should be considered to minimize impact. There is no indication that respondent conducted such a survey. Instead, the record establishes that respondent assumed the presence of the species and noted them, along with the Indiana bat, in the December 2015 environmental assessment form (EAF). In part 3 of the EAF, respondent reasoned that there would be no direct take of bats because the clearing of any trees in which the bats roost would occur during the winter months when the bats are hibernating in caves. There was, however, no such reasoning with respect to the imperial moth, the northern bog violet, or any animal or plant species that might live or grow in the inland salt marsh. Their presence was merely noted in part 3 of the form, along with the bare conclusion that there would be no significant impact on those species. We thus conclude that the Town Board failed to take a hard look at the project's impact on wildlife (see generally Wellsville Citizens for Responsible Dev., Inc., 140 AD3d at 1769) and failed to make a reasoned elaboration of the basis for its determination (see generally Rochester Eastside Residents for Appropriate Dev., Inc., 150 AD3d at 1680).
In addition, the DEC made certain recommendations for avoiding impacts on surface water, particularly the stream corridor. In order to avoid such impacts, respondent noted in part 3 of the EAF that it planned to reroute sewer main locations "to the extent practicable" and that, if impracticable, sanitary sewer piping "can be horizontally directionally drilled to avoid impacts." On the previous page, however, respondent had already noted its intent to use directional drilling "when possible." Thus, respondent anticipated that there would be circumstances where rerouting was impracticable or directional drilling was impossible. Respondent did not address how it planned to avoid adverse impacts on the stream corridor in particular, or surface water in general, in circumstances where rerouting was impracticable and horizontal directional drilling was impossible, nor did respondent conclude that both such circumstances cannot or do not simultaneously exist on this site. By all appearances, respondent merely set forth general practices for avoiding significant adverse impacts on surface water and stream corridors without providing a reasoned elaboration that, by implementing such practices in this particular project, respondent would successfully avoid any significant adverse impacts on surface water. We thus conclude that the Town Board failed to make a reasoned elaboration of the basis for its determination (see generally id.).
We reject petitioner's challenge to the negative declaration with respect to historic and archaeological resources; noise, odor, and light; and consistency with community character.
Therefore, we conclude that the negative declaration with respect to wildlife and surface water is arbitrary and capricious (see Wellsville Citizens for Responsible Dev., Inc., 140 AD3d at 1769-1770), and thus the determination of respondent to acquire an easement over petitioner's real property must be annulled (see EDPL 207 [C] [3]).
In light of our determination, we do not consider petitioner's remaining grounds for annulment.
Entered: June 7, 2019
Mark W. Bennett
Clerk of the Court