10-3634-cv
Fortress Bible Church v. Feiner

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2011

(Argued: September 23, 2011    Decided: September 24, 2012)

Docket No. 10-3634-cv

-------------------------------------------------------x

FORTRESS BIBLE CHURCH, REVEREND DENNIS G. KARAMAN,

Plaintiffs-Appellees,

-- v. --

PAUL J. FEINER, individually & in his official capacity as the Supervisor of the Town of Greenburgh, SONJA BROWN, in her official capacity as Councilwoman for the Town of Greenburgh, KEVIN MORGAN, in his official capacity as Councilman for the Town of Greenburgh, DIANA JUETTNER, in her official capacity as Councilwoman for the Town of Greenburgh, FRANCIS SHEEHAN, in his official capacity as Councilman for the Town of Greenburgh, TOWN BOARD OF GREENBURGH, THE TOWN BOARD OF THE TOWN OF GREENBURGH, TOWN OF GREENBURGH, THE TOWN OF GREENBURGH,

Defendants-Appellants.

-------------------------------------------------------x

B e f o r e :  WALKER, CHIN and LOHIER, Circuit Judges.

Defendants-appellants Paul J. Feiner, Sonja Brown, Kevin Morgan, Diana Juettner, Francis Sheehan, Town Board of Greenburgh, the Town Board of the Town of Greenburgh, and the Town of Greenburgh, appeal from a judgment of the United States District Court for the Southern District of New York (Stephen C.

Robinson, Judge), holding that they had violated plaintiffs-appellees' rights under the Religious Land Use and Institutionalized Persons Act as well as the First Amendment, the Equal Protection Clause, and New York constitutional and statutory law. We conclude that the district court correctly applied the law and discern no clear error in its factual findings. AFFIRMED.

> ROBERT A. SPOLZINO (Joanna Topping, Cathleen Giannetta, on the brief), Wilson, Elser, Moskowitz, Edelman & Dicker LLP, White Plains, New York, for Defendants-Appellants.
>
> DONNA E. FROSCO, Keane & Beane, P.C., White Plains, New York, for Plaintiffs-Appellees.

JOHN M. WALKER, JR., Circuit Judge:

This appeal concerns a longstanding land-use dispute between plaintiff-appellee Fortress Bible Church ("the Church") and defendant-appellant Town of Greenburgh, New York ("the Town") over the Church's plan to build a worship facility and school on land that it owned within the Town. After a series of contentious administrative proceedings effectively preventing the Church's project from going forward, the Church, along with its pastor, plaintiff-appellee Reverend Dennis G. Karaman ("Karaman"), sued the Town, its Town Board ("the Board"), and several Board members (collectively "the Town defendants") in the

2

United States District Court for the Southern District of New York (Stephen C. Robinson, <u>Judge</u>). The Church alleged violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc <u>et seq.</u>, as well as of its constitutional Free Exercise and Equal Protection rights, and Article 78 of New York's Civil Procedure Law. After a 26-day bench trial, the district court entered judgment for the plaintiffs on all counts. On appeal, the Town makes six contentions: (1) RLUIPA is by its terms inapplicable to the environmental quality review process employed by the Town to reject the proposal, (2) there was insufficient evidence that the defendants had imposed a substantial burden on plaintiffs' religious exercise under RLUIPA, (3) plaintiffs' class-of-one Equal Protection claim is not viable because they have not alleged a single comparator similarly situated in all respects, (4) plaintiffs' Free Exercise rights were not violated, (5) the Town did not violate Article 78, and (6) the district court lacked the authority to order the Town Zoning Board, a non-party, to take any action with regard to the Church. We find all of these contentions to be without merit and therefore AFFIRM the decision of the district court.

BACKGROUND

**Facts**

In reviewing a judgment after a bench trial, we accept the district court's factual findings unless they are clearly erroneous.  See Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 38-39 (2d Cir. 2009).  Because we do not identify error in any of the district court's findings that are pertinent to this appeal, we set forth the relevant facts as found by the district court.[1]

**I. The Church's Proposal**

Plaintiff Fortress Bible Church is a Pentecostal church established in the 1940s.  It is a tax-exempt religious organization with approximately 175 members.  In addition to its worship activities, the Church runs Fortress Christian Academy ("the School"), a private Christian school.  Plaintiff Dennis G. Karaman is the Church's pastor.

The Church is currently located in Mount Vernon, New York.  Its Mount Vernon facilities, however, are not adequate to accommodate its religious practice.  In 1998, the Church purchased a parcel of land on Pomander Drive in the Town of Greenburgh, New York, with the intention of building a larger facility.  This parcel ("the Pomander Drive property") was vacant

---

[1] A more comprehensive accounting of the facts can be found in the district court's thorough opinion.  Fortress Bible Church v. Feiner, 734 F. Supp. 2d 409 (S.D.N.Y. 2010).

except for a small residence on one edge.  The surrounding neighborhood includes residences, business offices, churches, and major roads.  Prior to purchasing the property, Karaman advised the Town of his intent to build a church and school on the grounds, and stated that if the property was not suitable for this purpose, he would not purchase it.

The Church sought to build a single structure on the Pomander Drive property that would house a worship facility and a school.  The proposed church would accommodate 500 people and the school would accommodate 150 students.  The structure would have 125 parking spaces and occupy 1.45 acres of the 6.53 acre plot. To construct its proposed building, the Church required three discretionary land use approvals from the Town: (1) site plan approval from the Board, (2) a waiver of the landscaped parking island requirement, and (3) a variance from the Town's Zoning Board of Appeals ("the Zoning Board") to allow the building to be located closer to one side of the property.  Because the Church's proposal required discretionary government approval, it triggered New York's State Environmental Quality Review Act ("SEQRA"), N.Y. Comp. Codes R. & Regs. Tit. 6, §§ 617.2(b), 617.3(a) (requiring environmental review process whenever government takes certain discretionary action).

**II. The SEQRA Review Process**

The SEQRA review process entails several stages. First, the "lead agency" (in this case, the Board) must make an initial determination of environmental significance. 6 N.Y.C.R.R. § 617.6. If the environmental impact of the proposal is small, the lead agency can issue a negative declaration, meaning there is no potential for significant adverse environmental impact, or a conditioned negative declaration, meaning that the potential for adverse environmental impact can be mitigated by the agency. § 617.7. Alternately, if the lead agency determines that the proposal has the potential for at least one significant adverse environmental impact, the lead agency must issue a "positive declaration" and require the applicant to submit an Environmental Impact Statement ("EIS") evaluating the environmental impact of the project. § 617.7. Preparation of an EIS involves several steps. The applicant prepares a scoping document (outlining the scope of the environmental impact), a draft EIS ("DEIS"), and a final EIS ("FEIS"), and must seek feedback at each stage from the public and approval from the lead agency. §§ 617.8, 617.9.

The Church submitted its initial proposal on or about November 24, 1998. On January 27, 1999, the Church and its consultants appeared at a Board work session to discuss the application. The Board requested that the Church examine the project's impact on local traffic and access to the property. In

6

response, the Church hired consultants to perform a traffic study of the area. It also sought feedback from the New York State Department of Transportation ("NYSDOT") and nearby residents. On or about January 17, 2000, the Church submitted a revised proposal which included a comprehensive traffic study and additional information about potential environmental impacts. After reviewing the proposal, Anthony Russo ("Russo"), the Town Planning Commissioner, believed that the Church had adequately mitigated the Town's traffic concerns and advised the Board that it could issue a Conditioned Negative Declaration.

On July 11, 2000, Karaman and other Church representatives attended a work session with the Board. At the meeting, defendant Town Supervisor Paul Feiner ("Feiner") stated that he was concerned with the Church's tax-exempt status and asked it to donate a fire truck or make some other payment in lieu of taxes. Other Board members commented to the effect that they did not want the property to be used as a church. The Church declined to donate a fire truck or make any other payment in lieu of taxes. On July 19, 2000, the Board issued a positive declaration, triggering the full SEQRA review process.

Over the next several years, the Church provided all of the information required by the SEQRA process. It produced a scoping document followed by a DEIS, which the Town accepted as complete on October 24, 2001. The Town held hearings on the proposal on

7

December 12, 2001, and January 9, 2002. During this comment period, NYSDOT submitted comments indicating its approval of the Church's traffic study. Despite the Church's efforts, however, the Town continued to resist the project. On May 3, 2001, Karaman met with Feiner to discuss the review process. Karaman asked what he could do to move the process along, and Feiner responded that the Church could agree to make yearly financial contributions to the fire department. Another Board member suggested to Russo on multiple occasions that he should "stop" or "kill" the project. In early 2002, the Town replaced Russo with a new Planning Commissioner and retained consultants to analyze the Church's proposal.

On April 5, 2002, after further consultation with Town officials, the Church submitted a proposed FEIS. The Town refused to discuss the project with the Church and refused to move forward with the review process. Despite having accepted the DEIS and scoping document as complete, which would normally finalize the universe of issues relevant to SEQRA review, the Town began to request new information and raise new issues for the Church to address. The Church provided the requested information and attempted to meet the Town's demands. During the summer of 2002, the Town stopped the review process altogether due to the Church's refusal to reimburse it for certain disputed fees the Town had incurred during the process. On January 17,

2003, the Church sent a letter to the Town summarizing its view that the Town had inappropriately delayed its building application despite its consistent efforts to meet the Town's requests.

On February 25, 2003, the Town took the unusual step of taking over preparation of the FEIS. It did not notify the Church that it had done so until March 17, 2003. The Town edited the FEIS to include a number of additional problems with the proposal, and did not consider the Church's input addressing those problems.

On June 11, 2003, the Church instituted this action. It alleged violations of RLUIPA and its rights under the First and Fourteenth Amendments, as well as New York law, and sought an order compelling the Town to complete SEQRA review and approve the project.

On April 14, 2004, the Town denied the Church's application.[2] In its findings statement the town stated its primary reasons for rejecting the application as: (1) violation of a recently enacted "steep slope" zoning ordinance; (2) stress on the police and fire departments; (3) retaining walls that constituted an attractive nuisance; and (4) traffic and parking problems.

---

[2] The Town initially tried to adopt this findings statement on January 6, 2004, but the district court declared that statement void because it violated New York's Open Meetings Law.

**III. The District Court Decision**

The district court conducted a bench trial over 26 non-consecutive days between October 2006 and March 2007. On August 11, 2010, in a lengthy opinion containing 622 factual findings, the district court found that the Town had violated the Church's rights under RLUIPA, the Free Exercise Clauses of the First Amendment and New York Constitution, the Equal Protection Clauses of the Fourteenth Amendment and New York Constitution, and Article 78 of New York's Civil Procedure Law. Fortress Bible Church v. Feiner, 734 F. Supp. 2d 409, 522-23 (S.D.N.Y. 2010). It found that the Town had acted in bad faith and had used the SEQRA review process illegitimately as a way to block the Church's proposal. It therefore concluded that the Town had substantially burdened the Church by preventing it from moving to an adequate facility, resulting in a violation of RLUIPA and the Free Exercise Clause. Id. at 496-508, 511-12. The district court also found an Equal Protection violation based on a class-of-one theory. Id. at 513-17. While acknowledging that the Church had not presented a single comparator similarly situated in all respects, it found the Church's comparators to be sufficient with regard to each of the discrete issues cited by the Town. Additionally, the district court found that Town staff, including at least one Board member, had intentionally

10

destroyed discoverable evidence despite specific instructions not to do so.

The district court ordered broad relief: (1) it annulled the positive declaration and findings statement; (2) it ordered that the Church's 2000 site plan be deemed approved for SEQRA purposes and enjoined any further SEQRA review; (3) it ordered the Board to grant the Church a waiver from the landscaped parking island requirement; (4) it ordered the Zoning Board to grant a variance permitting a side building location; (5) it ordered the Town to issue a building permit for the 2000 site plan; (6) it enjoined the Town from taking any action that unreasonably interferes with the Church's project; and (7) it imposed $10,000 in sanctions for spoliation of evidence. Id. at 520-22. The district court directed the parties to submit additional information with regard to compensatory damages. Id. at 520-21. Judgment was entered on August 12, 2010. The Town appeals.

**DISCUSSION**

On appeal, the Town challenges the district court's holding that it violated the Church's rights under RLUIPA, the First and Fourteenth Amendments, the New York Constitution, and Article 78. It also contends that the district court lacked any authority over the Zoning Board, a non-party to this litigation.

11

We review a district court's conclusions of law after a bench trial de novo and its findings of fact for clear error. Reynolds v. Giuliani, 506 F.3d 183, 189 (2d Cir. 2007). We may affirm on any ground appearing in the record. Freedom Holdings, Inc., v. Cuomo, 624 F.3d 38, 49 (2d Cir. 2010). The district court's grant of injunctive relief is reviewed for abuse of discretion. Third Church of Christ, Scientist, of N.Y.C. v. City of New York, 626 F.3d 667, 669 (2d Cir. 2010).

**RLUIPA**

A.  Applicability

RLUIPA bars states from imposing or implementing a "land use regulation" in a manner that imposes a substantial burden on a person or institution's religious exercise unless it is the least restrictive means of furthering a compelling state interest. 42 U.S.C. § 2000cc(a)(1). A "land use regulation" is defined as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land." § 2000cc-5(5). Appellants contend that RLUIPA is entirely inapplicable because SEQRA is not a land use regulation within the meaning of the statute.[3] Though we agree that SEQRA itself

---

[3] The Church contends that the Town has waived this argument by not raising it during trial. The issue was raised before the district court in a post-trial brief, and was considered by the district court. It is therefore proper to consider this argument on appeal. See Quest Med., Inc. v. Apprill, 90 F.3d 1080, 1087 (5th Cir. 1996).

12

is not a zoning or landmarking law for purposes of RLUIPA, we hold that when a government uses a statutory environmental review process as the primary vehicle for making zoning decisions, those decisions constitute the application of a zoning law and are within the purview of RLUIPA.[4]

Environmental quality laws are designed to inject environmental considerations into government decisionmaking and minimize the adverse environmental impact of regulated actions. See City Council of Watervliet v. Town Bd. of Colonie, 3 N.Y.3d 508, 515, 520 n.10 (2004). This approach was first adopted by the federal government with the National Environmental Policy Act of 1969 ("NEPA"), Pub. L. 91-190, 83 Stat. 852 (1970) (codified as amended at 42 U.S.C. § 4321 et seq.). See, Caleb W. Christopher, Success by a Thousand Cuts:  The Use of Environmental Impact Assessment in Addressing Climate Change, 9 Vt. J. Envtl. L. 549, 552-53 (2008). A number of states, including New York, have enacted state government review laws patterned after NEPA. See, e.g., California Environmental Quality Act, Cal. Pub. Res. Code § 21002.1 et seq.

No court of appeals has yet addressed whether an environmental quality statute may constitute a zoning law under

---

[4] The parties agree that no landmarking law was involved in this dispute.  We therefore need only decide whether the SEQRA review process, as employed here, constituted the application of a zoning law.

13

RLUIPA.[5] Although the purview of "zoning" is hard to delineate precisely, at its core it involves the division of a community into zones based on like land use. See City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 54-55 (1986); Daniel R. Mandelker, Land Use Law, §§ 4.02-4.15 (5th ed. 2003); Patricia E. Salkin, American Law of Zoning § 9.2 (5th ed. 2008). We have little difficulty concluding that SEQRA itself is not a zoning law within the meaning of RLUIPA. SEQRA is not concerned with the division of land into zones based on use. It is focused on minimizing the adverse environmental impact of a wide range of discretionary government actions, many of which are totally unrelated to zoning or land use.[6] See N.Y. Envtl. Conserv. Law § 8-0105(4). Thus, the Town's use of the SEQRA process did not automatically implicate RLUIPA.

By its terms, however, RLUIPA also applies to "the application of" a zoning law. 42 U.S.C. § 2000cc-5(5). Although

---

[5] The Ninth Circuit noted the question but declined to reach it in San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1036 (9th Cir. 2004).

[6] "Actions" that trigger SEQRA include "(i) projects or activities directly undertaken by any agency; or projects or activities supported in whole or part through contracts, grants, subsidies, loans, or other forms of funding assistance from one or more agencies; or projects or activities involving the issuance to a person of a lease, permit, license, certificate or other entitlement for use or permission to act by one or more agencies; [and] (ii) policy, regulations, and procedure-making." N.Y. Envtl. Conserv. Law § 8-0105(4).

14

SEQRA by itself is not a zoning law, in this case the Town used the SEQRA review process as its vehicle for determining the zoning issues related to the Church's land use proposal. The fact that these issues were addressed during the SEQRA review process rather than the Town's normal zoning process does not transform them into environmental quality issues. We therefore conclude that, in these circumstances, the Town's actions during the review process and its denial of the Church's proposal constituted an application of its zoning laws sufficient to implicate RLUIPA for a number of reasons.

First, the SEQRA review process was triggered because the Church required three discretionary land use approvals from the Town: (1) site plan approval, (2) a waiver of the landscaped parking island requirement, and (3) a variance to allow the building to be located closer to one side of the property. These approvals all relate to zoning and land use rather than traditional environmental concerns. See Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1235 n.17 (11th Cir. 2004) (citing regulations about building size and parking as "run of the mill" zoning laws); cf. 6 N.Y.C.R.R. § 617.7(c)(1) (providing examples of adverse environmental impacts under SEQRA). If the Town had issued a Negative Declaration and foregone SEQRA review, these three issues would have been treated by the Town as zoning

15

questions and their outcome would have been subject to challenge under RLUIPA.

Second, in its Town Code, the Town has intertwined the SEQRA process with its zoning regulations.[7] The regulations relating to SEQRA are contained in Part II of the Town Code, titled "Land Use." Section 200-6 of the Town Code states that "[n]o action . . . shall be carried out, approved or funded by [a Town agency] unless it has complied with [SEQRA]." Under § 285-55, site plan approval is required for a building permit. Since site plan approval is a discretionary approval that triggers SEQRA, any construction project will involve some level of SEQRA review. If a positive declaration is issued, the applicant will have to proceed through the SEQRA process before addressing any zoning issues, or resolve those issues during the SEQRA process. 6 N.Y.C.R.R. § 617.3(a); Town Code §§ 200-8 – 200-11 (describing SEQRA review process that must be completed).

Third, once the review process was underway, the Town focused on zoning issues rather than traditional environmental issues. The Town's primary stated concern was increased traffic. Although increased car traffic potentially raises environmental concerns due to increased emissions, the district court's factual findings make clear that the Town was concerned with the common

[7] The Town Code is available at http://www.ecode360.com/GR0237.

16

everyday annoyances associated with traffic, not with its environmental impact. The Town's FEIS emphasized concerns about line of sight for cars turning into the proposed property and the adequacy of the Church's parking. The Town also based denial of the project on the height of proposed retaining walls and the alleged failure to comply with a steep slope ordinance. These are standard land use issues.

Finally, to hold that RLUIPA is inapplicable to what amounts to zoning actions taken in the context of a statutorily mandated environmental quality review would allow towns to insulate zoning decisions from RLUIPA review. A town could negotiate all of a project's zoning details during a SEQRA review and completely preempt its normal zoning process. These decisions would then be immune to RLUIPA challenge. We decline to endorse a process that would allow a town to evade RLUIPA by what essentially amounts to a re-characterization of its zoning decisions.

Indeed, the Town's actions were to that effect notwithstanding that RLUIPA was enacted while the SEQRA review process was underway. The district court's comprehensive findings demonstrate that the Town disingenuously used SEQRA to obstruct and ultimately deny the Church's project. The Town's own Planning Commissioner (subsequently replaced by the Town) believed that the alleged environmental impacts did not warrant a

17

positive declaration, but the Town initiated the SEQRA review process anyway after the Church refused to accede to the Town's demand that it donate a fire truck or provide some other payment in lieu of taxes. The Town then manipulated its SEQRA findings statement to "kill" the project on the basis of zoning concerns despite the fact that there were no serious environmental impacts. We decline to insulate the Town from liability with regard to its decisions on zoning issues simply because it decided them under the rubric of an environmental quality review process.

To recap, in no sense do we believe that ordinary environmental review considerations are subject to RLUIPA. However, when a statutorily mandated environmental quality review process serves as a vehicle to resolve zoning and land use issues, the decision issued constitutes the imposition of a land use regulation as that term is defined in RLUIPA. See 42 U.S.C. § 2000cc(a)(1); 2000cc-5(5).

B. Substantial Burden

The Town also argues that, if RLUIPA does apply, the Church was not substantially burdened within the meaning of the statute because the Church had alternative means of building a new facility. The Town contends that the only harm the Church suffered was an inability to build the exact structure it

18

desired, which does not rise to the level of a substantial burden. We find sufficient evidence in the record to support the district court's finding that the Church's current facilities were inadequate to accommodate its religious practice and that the Town was acting in bad faith and in hostility to the project such that it would not have allowed the Church to build any worship facility and school on the Pomander Drive Property. Accordingly, we affirm the district court's holding that the Town's actions during the SEQRA process substantially burdened the Church's religious practice.

RLUIPA prohibits a government from imposing a land use regulation in a way that creates a substantial burden on the religious exercise of an institution.[8] 42 U.S.C. § 2000cc(a)(1). A substantial burden is one that "directly coerces the religious institution to change its behavior." Westchester Day Sch. v. Vill. of Mamaroneck, 504 F.3d 338, 349 (2d Cir. 2007) (emphasis omitted). The burden must have more than a minimal impact on religious exercise, and there must be a close nexus between the two. Id.

_____

[8] 42 U.S.C. § 2000cc(b) also bars discrimination against a religious entity or treatment on unequal terms with nonreligious entities. The district court found a substantial burden and therefore did not reach the plaintiffs' equal terms or discrimination RLUIPA claims. Fortress Bible Church, 734 F. Supp. 2d 409, 508-09. Since we affirm on the substantial burden claim, we too need not reach the claims for discrimination or unequal terms.

A denial of a religious institution's building application is likely not a substantial burden if it leaves open the possibility of modification and resubmission. Id. However, if the town's stated willingness to consider another proposal is disingenuous, a conditional denial may rise to the level of a substantial burden. Id. Moreover, when the town's actions are arbitrary, capricious, unlawful, or taken in bad faith, a substantial burden may be imposed because it appears that the applicant may have been discriminated against on the basis of its status as a religious institution. Id. at 350-51; see also Saints Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin, 396 F.3d 895, 900 (7th Cir. 2005).

The district court credited Karaman's testimony that the Church's Mount Vernon facility was not adequate to accommodate its religious practice. Fortress Bible Church, 734 F. Supp. 2d at 488-90. Specifically, Karaman stated that the Church was unable to expand its membership, which it believes is a God-given mission, host missionaries, perform full-immersion baptisms, or perform "altar calls," in which members of the congregation pray at the altar. Id. at 488-89. Karaman also testified that the Church was unable to adequately run a Christian school because the School's present facilities did not have enough space to accommodate handicapped students or higher-level subjects. Id.

20

at 490-91. We identify no error in the district court's finding that the Church was substantially burdened by its inability to construct an adequate facility.

Similarly, we find no error in the district court's finding that the "Defendants' purported willingness to consider a modified plan [was] wholly disingenuous." Id. at 502. The district court identified ample evidence that the Town wanted to derail the Church's project after it refused to accede to its demand for a payment in lieu of taxes, and that it had manipulated the SEQRA process to that end. Additionally, the Town continually rejected the Church's attempts to accommodate its stated concerns. The record easily supports the district court's finding that the Town's actions amounted to a complete denial of the Church's ability to construct an adequate facility rather than a rejection of a specific building proposal. See Westchester Day Sch., 504 F.3d at 349.

Finally, we conclude, as the district court found based upon ample evidence, that the burden on the Church was more than minimal and that there was a close nexus between the Town's denial of the project and the Church's inability to construct an adequate facility. Fortress Bible Church, 734 F. Supp. 2d at 501-08. Because, as the district court found, the Town's stated compelling interests were disingenuous, its actions violated

21

RLUIPA. Id. at 502-05, 508. Our conclusion that the Church was substantially burdened is bolstered by the arbitrary, capricious, and discriminatory nature of the Town's actions, taken in bad faith. Westchester Day Sch., 504 F.3d at 350-51. The Town attempted to extort from the Church a payment in lieu of taxes, it ignored and then replaced its Planning Commissioner when he advocated on the Church's behalf, and Town staff intentionally destroyed relevant evidence. Further, the district court's finding regarding the Town's open hostility to the Church qua church was not clear error; the record reflects comments from members of the Board indicating that they were opposed to the project because it was "another church." The Town's desire to prevent the Church from building on its property relegated it to facilities that were wholly inadequate to accommodate its religious practice. We affirm the district court's finding that the Town violated the Church's rights under RLUIPA.

**Free Exercise**

The Town also challenges the district court's holding that it violated the Church's First Amendment right to the Free Exercise of Religion. The First Amendment generally prohibits government actions that "substantially burden the exercise of sincerely held religious beliefs" unless those actions are

22

narrowly tailored to advance a compelling government interest. Fifth Ave. Presbyterian Church v. City of New York, 293 F.3d 570, 574 (2d Cir. 2002). In other words, such actions are subject to strict scrutiny by reviewing courts. However, "[w]here the government seeks to enforce a law that is neutral and of general applicability, . . . it need only demonstrate a rational basis for its enforcement." Id.; see also Employment Div. v. Smith, 494 U.S. 872, 879 (1990).

In this case, the district court applied strict scrutiny and, referencing its RLUIPA analysis, concluded that the Town had substantially burdened the Church's religious exercise and lacked a compelling interest. On appeal, the Town contends that rational basis review, rather than strict scrutiny, is the correct standard in this context because SEQRA is a neutral law of general applicability. The Church maintains that strict scrutiny is appropriate because SEQRA review involves an individualized assessment, thus placing it outside the purview of Smith. See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 537 (1993).

The Second Circuit has not specifically addressed whether zoning decisions trigger rational basis review or strict scrutiny. Although some scattered district court decisions have held that zoning laws by their nature involve individualized

23

assessments and trigger strict scrutiny, see Cottonwood Christian Ctr. v. Cypress Redevelopment Agency, 218 F. Supp. 2d 1203, 1222-23 (C.D. Cal. 2002); Freedom Baptist Church of Del. Cnty. v. Twp. of Middletown, 204 F. Supp. 2d 857, 868 (E.D. Pa. 2002), the majority of circuits that have addressed this question have concluded that zoning laws with the opportunity for individualized variances are neutral laws of general applicability.  See Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 764 (7th Cir. 2003); Cornerstone Bible Church v. City of Hastings, 948 F.2d 464, 472 (8th Cir. 1991); Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 651-55 (10th Cir. 2006); First Assembly of God of Naples, Fla., Inc. v. Collier Cnty., 20 F.3d 419, 423-24 (11th Cir. 1994). Similarly, this circuit has found a landmarking law to be facially neutral despite the fact that it gave the government the ability to designate "historical districts," and therefore entailed some measure of individual assessment.  Rector, Wardens, & Members of Vestry of St. Bartholomew's Church v. City of New York, 914 F.2d 348, 354-56 (2d Cir. 1990).

We need not resolve here whether zoning variance decisions challenged under the Free Exercise Clause are subject to strict scrutiny or rational basis review because we conclude that on the record before us there was no rational basis for the Town's

24

actions. The district court's holding was premised on its finding that the Town had acted in bad faith and disingenuously misused the SEQRA process to block the Church's project. The district court found as a factual matter that the reasons offered by the Town for delaying and denying the project were pretextual and concluded that the Town's witnesses were not credible. See Fortress Bible Church, 734 F. Supp. 2d at 491-94 (providing a "mere sampling" of examples of non-credible testimony by Town witnesses), 505-08 (explaining how each of the Town's stated reasons was pretextual). The record supports this conclusion. There is no basis to distrust the district court's finding that the Town's proffered rational bases were not sincere and that it was instead motivated solely by hostility toward the Church qua church. Accordingly, we conclude that the Town lacked a rational basis for delaying and denying the Church's project and therefore violated the Church's Free Exercise rights.[9]

The Town also presses the argument that the Free Exercise Clause is inapplicable to land use regulations. It points to decisions from several circuits holding that religious

---

[9] Appellants also challenge the district court's conclusion that they violated the parallel Free Exercise Clause in the New York Constitution. Under that clause, courts employ a balancing test to determine if the interference with religious exercise was unreasonable. Catholic Charities of Diocese of Albany v. Serio, 7 N.Y.3d 510, 525 (2006). For the reasons stated above, we conclude that the Town's interference with the Church's project was not reasonable and violated the New York Constitution.

25

institutions do not have a constitutional right to build wherever they like.  See, e.g., Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 273-74 (3d Cir. 2007); Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, 699 F.2d 303, 306-07 (6th Cir. 1983).  The cases cited by the Town are inapposite.  In those cases, the proposed building was directly barred by town ordinance and the religious institution sought individual relief from the general rule.  The burden in this case resulted from the Town's disingenuous bad faith efforts to stall and frustrate this particular Church's construction plan, which was not itself barred by the Town's zoning code.  The lengthy SEQRA review process was costly to the Church, and the Church was forced to remain in an inadequate facility for its duration.

For these reasons, we affirm the district court's holding that the Town violated the Church's First Amendment right to the free exercise of religion.

**Equal Protection**

The Town argues on appeal that the district court erred in finding a violation of the Fourteenth Amendment's Equal Protection Clause because the Church's class-of-one theory is barred by Engquist v. Ore. Dep't of Agric., 553 U.S. 591 (2008),

26

and because the Church has not provided a single comparator situated similarly to it in all respects.

The Equal Protection Clause has traditionally been applied to governmental classifications that treat certain groups of citizens differently than others. Id. at 601. In Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), however, the Supreme Court affirmed the existence of a class-of-one theory for equal protection claims, under which a single individual can claim a violation of her Equal Protection rights based on arbitrary disparate treatment. In Olech, a property owner sought to connect her property to the municipal water supply. The village had required a 15-foot easement from other property owners who had sought to connect to the water supply, but demanded a 33-foot easement from Olech. The Supreme Court recognized an Equal Protection claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at 564.

Eight years later, in Engquist, the Court clarified that a class-of-one claim is not available in the public employment context. It based its holding primarily on the government's status in that context as a proprietor rather than a sovereign, and the corresponding decrease in constitutional protections for

27

its employees. 553 U.S. at 598-99, 605-09. The Court also noted that certain governmental functions that involve discretionary decisionmaking are not suitable for class-of-one claims. Id. at 603-04.

We have since held that Enqquist does not bar all class-of-one claims involving discretionary state action. In Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135 (2d Cir. 2010), we recognized a class-of-one claim in the context of a state system for issuing clinical testing laboratory permits. We noted that the state was acting as a sovereign rather than a proprieter, and further observed that the licensing panel did not have complete discretion because it operated within a regulatory framework, held a mandatory hearing, and its decision could be challenged under New York Civil Procedure Law Article 78.

Like Analytical Diagnostic Labs, this case presents a clear standard against which departures can be easily assessed. See Enqquist, 553 U.S. at 602-03. The SEQRA review process is guided by regulation and the result can be challenged under Article 78. Additionally, the Town was acting in its regulatory capacity as a sovereign rather than as a proprieter; it was making decisions about the ways in which property owners could use their land. The evidence provided by the Church illustrates a disparity in

28

treatment that cannot fairly be attributed to discretion.  A class-of-one claim is thus cognizable in this context.

The Town argues that, even if a class-of-one claim is viable, the Church's evidence was not sufficient to establish such a claim because it did not provide a single comparator similarly situated in all respects, but instead presented evidence of multiple projects that were each treated differently with regard to a discrete issue.  We have held that a class-of-one claim requires a plaintiff to show an extremely high degree of similarity between itself and its comparators.  Ruston v. Town Bd. for Skaneateles, 610 F.3d 55, 59-60 (2d Cir. 2010).  The Church must establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."  Id. at 60 (quotation marks omitted).

The Church's use of multiple comparators is unusual, and presents us with a matter of first impression.  We conclude, however, that the Church's evidence of several other projects treated differently with regard to discrete issues is sufficient

29

in this case to support a class-of-one claim. The purpose of requiring sufficient similarity is to make sure that no legitimate factor could explain the disparate treatment. See Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005) (noting that purpose of comparator requirement is to "provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose . . . is all but certain"), overruled on other grounds, Appel v. Spiridon, 531 F.3d 138, 139-40 (2d Cir. 2008). Where, as here, the issues compared are discrete and not cumulative or affected by the character of the project as a whole, multiple comparators are sufficient so long as the issues being compared are so similar that differential treatment with regard to them cannot be explained by anything other than discrimination. We conclude that there is sufficient evidence in the record to support the Church's class-of-one claim.

The principal reasons for denying the Church's application cited in the Town's FEIS were violation of a recently enacted "steep slope" zoning ordinance, stress on the police and fire departments, retaining walls that constituted an attractive nuisance, and traffic and parking problems. A proposal by the Hackley School, located in a mixed-use neighborhood, to double

30

its size, involved the same steep slope concerns as the Church's proposal. The Hackley School proposal was submitted in 2001, almost three years after the Church's proposal, and at that time, the Town had yet to enact its steep slope ordinance. While considering the ordinance, the Town ordered a moratorium on steep slope construction. It issued the Hackley School a waiver from this moratorium, however, and then expedited review of the proposal so that it was approved prior to adoption of the steep slope ordinance. Despite the fact that the Church's proposal was submitted years earlier than the Hackley School's, the Town cited the Church's failure to comply with the steep slope ordinance as a basis for denying its proposal and never provided it with a waiver or the option of expedited consideration.

The Hackley School proposal also involved retaining walls comparable to those proposed by the Church. Although the Town did not raise retaining walls as a concern with the Hackley School's application, it relied on the Church's proposed retaining walls as a basis for denying the Church's application, and did so even after the Church had offered to construct a fence on top of its walls to eliminate any danger.

Proposals by Union Baptist Church and the Solomon Schechter School both failed to provide the amount of parking required by Town ordinance. In both instances, however, the Town

31

accommodated the proposals by allowing the use of on-street parking and approved the projects without requiring the mandated number of spaces. The Church's proposal contained the required number of spaces, but the Town still cited parking concerns as a reason for denying it and failed to offer any accommodation.

Finally, the Town's primary stated reason for issuing a positive declaration was increased traffic. However, a proposal by LDC Properties, Inc., to build a commercial office building near the same major intersection as the Church's proposal ("the LOSCO proposal") received a conditioned negative declaration even though, according to the Town's own traffic consultant, it raised the same traffic concerns as the Church's proposal.[10] The Town did not require the LOSCO proposers to take any steps to mitigate these traffic concerns. Similarly, the Solomon Schechter School proposal was located close to the Pomander Drive property and created similar vehicle and pedestrian traffic concerns. The

---

[10] In fact, the Town appears to have been acutely aware of the overlapping traffic issues. The Deputy Town Attorney advised the Town Planning Commissioner that because of "the comparisons that may be drawn" between the Church and LOSCO, "please be careful and conscious of potential issues in drafting . . . the determination of significance. . . . Remember that they have the same traffic consultant and be wary." Fortress Bible Church, 734 F. Supp. 2d at 476.

Town approved this application without requiring any steps from the applicant to mitigate traffic.[11]

In short, the Church has presented overwhelming evidence that its application was singled out by the Town for disparate treatment. Though each of the comparator projects involved features unique to that proposal, the Town has not explained how those other features could have influenced discrete issues like the adequacy of parking, the safety of retaining walls, or increased traffic. We recognize that, where multiple reasons are cited in support of a state actor's decision, it will usually be difficult to establish a class-of-one claim. However, where, as here, a decision is based on several discrete concerns, and a claimant presents evidence that comparators were treated differently with regard to those specific concerns without any plausible explanation for the disparity, such a claim can succeed. Further, such a claim is bolstered where, as here, the evidence demonstrates that the government's stated concerns were pretextual. We affirm the district court's conclusion that the Church has adequately established a class-of-one Equal Protection claim.

---

[11] Additionally, for both LOSCO and the Solomon Schechter School, the Town analyzed the impact on traffic under the assumption that the Church's proposal had already been completed and was generating traffic. Yet it still approved the proposals without requiring any traffic mitigation.

**Article 78**

Under Article 78 of New York's Civil Procedure Law, a town's SEQRA determination may be set aside when it is "arbitrary, capricious or unsupported by the evidence." Riverkeeper, Inc. v. Planning Bd. of Southeast, 9 N.Y.3d 219, 232 (2007). The district court held that the Town's determination was not supported by substantial evidence because the Town's stated concerns were either "unsupported" or "wholly fabricated." Fortress Bible Church, 734 F. Supp. 2d at 519. The Town contends that its findings were rationally based on the findings of its traffic consultant, and that the district court's decision was therefore in error.

As we have previously discussed, the record contains ample evidence to support the district court's conclusion that the Town's actions were wholly disingenuous. Accordingly, we identify no error with the district court's decision to set aside the Town's SEQRA determination.

**The District Court's Injunction**

Finally, the Town argues that the district court abused its discretion in crafting its injunction because it was not permitted to enjoin "governmental determinations that have not yet been made," Appellant's Br. at 37, and because it had no

34

authority to bind the Zoning Board, which was not a party to the litigation.

We review a district court's grant of injunctive relief for abuse of discretion. See Etuk v. Slattery, 936 F.2d 1433, 1443 (2d Cir. 1991). A district court has substantial freedom in framing an injunction. Id. The district court's injunction: (1) ordered that the Church's 2000 site plan be deemed approved for SEQRA purposes and enjoined any further SEQRA review; (2) ordered the Board to grant the Church a waiver from the landscaped parking island requirement; (3) ordered the Zoning Board to grant a variance permitting a side building location; (4) ordered the Town to issue a building permit for the 2000 site plan; and (5) enjoined the Town from taking any action that unreasonably interferes with the Church's project.

With regard to its first argument, the Town relies on Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743 (2010). Geertson involved a suit against the Animal and Plant Health Inspection Service ("APHIS"). APHIS had decided to completely deregulate a certain species of genetically modified alfalfa. The district court enjoined APHIS from fully deregulating the alfalfa, and further issued an injunction preemptively barring APHIS from implementing any partial deregulation plan. The Supreme Court held that the latter portion of the injunction was

35

an abuse of the district court's discretion because the plaintiffs could file a new suit if APHIS actually attempted partial deregulation and there was no evidence that partial deregulation would cause the same irreparable harm as full deregulation. Id. at 2760-61. Geertson has no bearing on the present case. The district court's injunction was specifically tailored to the injury the Church had suffered and did not exceed the district court's discretion.

The Town also argues that the portion of the injunction compelling the Zoning Board to grant a variance permitting a side building location exceeded the district court's authority because, under New York law, the Zoning Board is a separate entity from the Town over which the district court had no jurisdiction. See Commco, Inc. v. Amelkin, 62 N.Y.2d 260, 265-68 (1984) (town board has no authority to bind the town's zoning board to a consent decree to which the zoning board was not a party). We need not reach this question, however, because the Town did not raise this objection before the district court and has therefore waived it on appeal. See In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129, 132 (2d Cir. 2008).

36

**CONCLUSION**

For the reasons described above, the Town's arguments on appeal are without merit and we conclude that the relief ordered by the district court was within its discretion.  The judgment of the district court is AFFIRMED.