12-3746-cv
*Musco Propane, LLP v. Town of Wolcott Planning and Zoning Comm'n, et al.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of September, two thousand thirteen.

PRESENT:

> PIERRE N. LEVAL,
> JOSÉ A. CABRANES,
> CHESTER J. STRAUB,
> > *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MUSCO PROPANE, LLP,

> *Plaintiff-Appellant,*

-v.-                                                                    No. 12-3746-cv

TOWN OF WOLCOTT PLANNING AND ZONING COMMISSION, TOWN OF WOLCOTT ZONING BOARD OF APPEALS, THOMAS G. DUNN, in his individual and official capacity, DAVID KALINOWSKI, in his individual and official capacity, RAYMOND MAHONEY, in his individual and official capacity, SAMUEL ZOTTO, in his individual and official capacity, PETER CARMODY, in his individual and official capacity, CATHE SHERMAN, in her individual and official capacity, WILLIAM OLMSTEAD, in his individual and official capacity, STEVEN GRANT, in his individual and official capacity, BRETT MUCCINO, in his individual and official capacity, PAUL MAZUREK, in his individual and official capacity, JOHN JONES, in his individual and official capacity, TOWN OF WOLCOTT,

1

*Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT: ERIC M. GRANT, Yamin & Grant, LLC, Waterbury, CT.

FOR DEFENDANTS-APPELLEES: MELINDA A. POWELL (Johanna G. Zelman, *on the brief*), Rose Kallor, LLP, Hartford, CT.

Appeal from the September 4, 2012 judgment of the United States District Court for the District of Connecticut (Janet C. Hall, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the September 4, 2012 judgment of the District Court be **AFFIRMED**.

Plaintiff Musco Propane, LLP, ("Musco") appeals an order of the District Court granting the motions for summary judgment of the defendants, who include the Town of Wolcott, its Planning and Zoning Commission (the "Zoning Commission"), and its Zoning Board of Appeals (the "Board of Appeals"), as well as the Mayor and individual members of the Zoning Commission and Board of Appeals (referred to together as the "Town"). In substance, Musco claims that its rights under the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment were violated when the Town denied Musco certain zoning permits and issued Musco a Cease and Desist Order requiring it to halt its wholesaling of propane. We assume familiarity with the underlying facts and procedural history of this case.

## BACKGROUND

Musco is in the business of selling propane for home heating. In 2006, the Zoning Commission approved Musco's application to place a 30,000-gallon, above-ground propane storage tank on its property in Wolcott. From the end of 2006, when Musco received its Certificate of Occupancy after installing the tank, until the spring of 2009, Musco's business proceeded without apparent problem. Indeed, we can infer that Musco's business was at least somewhat successful, because in the spring of 2009 it applied to the Zoning Commission for permission to install a second 30,000-gallon, above-ground propane storage tank.

Unfortunately for Musco, the application for a second tank triggered a significant conflict with the Zoning Commission. According to Musco, soon after submitting its application, it received a letter from the Zoning Commission indicating that the Commission had "recently discovered" a zoning regulation that had been in effect since before Musco's 2006 application had been granted, and that prohibited fuel storage tanks in excess of 10,000 gallons. Joint App'x 133. In response, Musco withdrew its application for a second tank.

2

This was not the end of the story, however. At a meeting of the Town Council, on October 6, 2009, Adolph Birkenberger, who lived near Musco, demanded an investigation into the improper approval in 2006 of Musco's original 30,000-gallon tank. According to the minutes from that meeting, Birkenberger protested that the Zoning Commission had "permitted the installation of a 120,000 pound bomb within 800 feet of his house." *Id.* at 689.

Around this same time, Musco's 50%-owner, Randy Petroniro, determined to become active in local politics. In November 2009, he was elected to the Town Council. A few months later, in January 2010, Musco re-submitted its application for a second 30,000-gallon tank, but this time included an alternative request for four 10,000-gallon tanks, as well as a proposal to amend Wolcott's regulations to permit 30,000-gallon propane tanks. On February 3, 2010, Musco's attorney appeared at a Zoning Commission meeting to discuss his client's requests. One of the members of the Commission asked whether Musco carried on any wholesale business, noting that the applicable zoning regulation permitted only retail sales on Musco's property. Musco's attorney conceded that Musco had been engaged in both retail and wholesale activity since 2006. Shortly thereafter, the Zoning Commission denied the application for a second 30,000-gallon tank and the proposed amendment to the Wolcott's Zoning Regulations. Musco appealed this decision to the Connecticut Superior Court.

Following the exchange between Musco's attorney and the Zoning Commission, Musco came under scrutiny for operating a wholesale propane business. After consulting with the Zoning Commission, Wolcott's Zoning Enforcement Officer, defendant David Kalinowski, issued a Cease and Desist Order, instructing Musco to cease any wholesaling of propane. On April 7, 2010, Musco appealed the Cease and Desist Order to the Board of Appeals. That same day, the Zoning Commission held a hearing on Musco's application for four 10,000-gallon tanks. On May 19, 2010—in what could not, at this point, have been a surprise—the Zoning Commission denied the application for the 10,000-gallon tanks. Musco also appealed this decision to the Connecticut Superior Court. Finally, on August 9, 2010, the Board of Appeals upheld the Cease and Desist Order, and, soon thereafter, Musco appealed once again to the Connecticut Superior Court.

On September 2, 2010, Musco brought this suit in the District Court for the District of Connecticut, complaining that (1) the Town had retaliated against Musco in violation of the First Amendment, both for Petroniro's election to the Town Council and for Musco's decision to file lawsuits in the Connecticut Superior Court challenging the Zoning Commission's decisions; (2) the Town had denied Musco equal protection of the law both through selective enforcement and discrimination against it as a so-called class-of-one; and (3) the Town had denied Musco due process of law by infringing on its property rights. On July 28, 2011, the District Court granted the Town's motion to dismiss the complaint, but permitted Musco to re-plead its retaliation and equal protection claims. After Musco filed an amended complaint and the parties proceeded through a course of discovery, on August 30, 2012, the District Court granted the Town's motions for

3

summary judgment as to Musco's remaining claims. On September 4, 2012, the District Court entered judgment in favor of the Town.

## DISCUSSION

We review *de novo* a district court's decision to grant a motion to dismiss under Rule 12(b)(6), accepting all well-pleaded facts in the complaint as true, and drawing all reasonable inferences in favor of the plaintiff. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). We similarly review *de novo* a district court's grant of summary judgment, drawing all factual inferences in favor of the non-moving party. *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 92 (2d Cir. 2013). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (citation and quotation marks omitted).

To prevail on its First Amendment retaliation claim, Musco "must show that (1) [its] conduct was protected by the First Amendment, and (2) such conduct prompted or substantially caused defendant's action." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002) (citations omitted); *see also Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011). There is no reasonable dispute that Petroniro's election to the Town Council and Musco's filing of lawsuits to challenge the Zoning Commission's decisions were activities protected by the First Amendment. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 356 (1976); *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992). The question is whether Musco has adduced evidence from which a reasonable juror could infer that the various denials of Musco's zoning applications and the issuance of the Cease and Desist Order were prompted or substantially caused by Musco's protected activities.

Musco first directs us to the timing of events, claiming that there was a "close temporal proximity" between its protected speech and the adverse actions. Musco Br. 17. Of course, in some cases, such temporal proximity might be enough to overcome summary judgment, where that proximity could give rise to an inference of causation. *See, e.g.*, *Nagle v. Marron*, 663 F.3d 100, 111 (2d Cir. 2011). But in this case, Musco's own recounting of events makes clear that the adverse actions began with the Zoning Commission's "discovery" of the relevant provisions of the Zoning Regulations—which happened well before Musco or Petroniro engaged in any protected speech.[1] Indeed, it was after this discovery, but before Musco or Petroniro engaged in any protected speech, that Adolph Birkenberger requested a "formal investigation" into the approval of Musco's first tank.

---

[1] We note that Musco has made no allegation, let alone adduced any evidence, that this "discovery," such as it was, was made in anything other than good faith.

4

Each of the actions taken thereafter by the Zoning Commission was a natural outgrowth of the concerns voiced by Adolph Birkenberger.[2] In short, we would be hard-pressed to find a rational juror who could infer that a course of action begun before Musco's protected speech could be caused by retaliation for that First Amendment activity. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Musco next refers us to the statements of one of the members of the Zoning Commission, Billy Olmstead. At his deposition, Olmstead indicated that one reason he supported issuing an order directing Musco to cease and desist from engaging in the wholesale propane business was that Musco was suing Wolcott and so should not be "give[n] a break." Joint App'x 1462. This statement certainly suggests retaliatory animus on the part of Olmstead, but Musco has failed to demonstrate any causal nexus between Olmstead's views and the decision to issue the Cease and Desist Order. *See Dougherty*, 282 F.3d at 91. As the District Court explained, the Cease and Desist Order was not issued by the Zoning Commission, but rather by the Zoning Enforcement Officer and nothing in the record shows that the Officer ever communicated with Olmstead about the decision to issue the Order. In sum, Musco has pointed to no evidence from which a reasonable juror could conclude that any adverse actions were taken by the Town on account of any of Musco's First-Amendment-protected activity. *See id.*

As for the equal protection claim, we agree with the District Court that no rational juror could find that a similarly-situated company was treated any differently, as required for either a class-of-one or a selective enforcement theory. *See Musco Propane*, 891 F. Supp. 2d at 271-74; *see generally Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (class-of-one claims); *Doninger v. Niehoff*, 642 F.3d 334, 357 (2d Cir. 2011) (selective enforcement claims).

---

[2] Specifically, the Zoning Commission first denied Musco's renewed application for a 30,000-gallon tank and its request to amend Wolcott's regulations to permit 30,000-gallon propane tanks. Both proposals were, of course, contrary to Wolcott's regulations, and, if granted, would have exacerbated community opposition to Wolcott's already-existing 30,000-gallon tank. The Town next ordered Musco to cease and desist from engaging in the wholesale of propane, which Musco's attorney had admitted at a public meeting was occurring, and which at least appeared to be in direct contravention of the applicable zoning regulation. *See* Joint App'x 873 (permitting "[r]etail sale and distribution of heating fuel and natural gas, specifically excluding storage tanks having a capacity in excess of 10,000 gallons"). To the extent that Musco contends that it was covered by a separate regulation that did permit wholesale business, we see nothing retaliatory in the Zoning Commission's view—even assuming it might ultimately be found to be incorrect—that the regulation pertaining specifically to heating fuel applied to Musco. *See id.* at 579-80. Finally, the Zoning Commission denied Musco's application for four 10,000-gallon tanks. Although it is true that the regulations do not appear to prohibit the installation of four 10,000-gallon tanks, the Zoning Commission's decision not to approve the request was related, among other things, to safety concerns associated with the already significant amount of propane stored in the 30,000-gallon tank on Musco's property, as well as to Musco's wholesaling, which the Commission reasonably believed to be in violation of the Town's regulations. *See id.* at 580. Each of the steps taken by the Town was logically connected, in sequence, to the original public complaint, lodged prior to any speech protected by the First Amendment, that Musco had installed an illegal tank.

5

Finally, as the District Court explained, even if Musco were entitled to the permits it requested—a question we surely do not answer in the affirmative—nothing in its complaint could plausibly give rise to the inference that the Zoning Commission's decisions were arbitrary or abusive, as would be required to prevail on a substantive due process claim. *See Musco Propane, LLP v. Town of Wolcott*, Civil Case No. 3:10-cv-1400 (JCH), 2011 WL 3267756, at *5-8 (D. Conn. July 28, 2011); *see generally Ferran v. Town of Nassau*, 471 F.3d 363, 369-70 (2d Cir. 2006).

We emphasize that we make no comment as to whether the Town's actions were proper as a matter of state law. We conclude only that Musco has failed to adduce sufficient evidence from which a rational juror could conclude that the actions of the defendants amounted to a violations of Musco's rights under the Constitution of the United States. It is for the state courts of Connecticut to determine whether Musco may have otherwise been the subject of illegal action by the Town.

## CONCLUSION

We have reviewed the record and the parties' arguments on appeal. For the reasons set out above, we **AFFIRM** the September 4, 2012 judgment of the District Court.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court

6